# Rhea v. The State.

### Indictment for Murder.

1. *Charge as to belief of Jury.*—Instructing the jury to find defendant guilty of murder if they "believe" that he formed a design to, and did, kill deceased, is erroneous, though in another portion of the charge, the jury is properly instructed as to reasonable doubt.

2. *Witness; credibility.*—Bad general character may be given in evidence to impeach a witness, but the fact that a witness is a prostitute cannot be singled out as a ground for impeaching her credibility.

3. *Violent character of deceased; when considered.*—On all doubtful questions as to who was the aggressor the violent or blood thirsty character of the deceased enters into the account, and warrants more prompt and decisive measures of defense, but furnishes no excuse or palliation for aggressive action, nor when the difficulty is brought on or sought by the accused.

| | |
|---|---|
| 100 | 119) |
| 104 | 18 |
| 104 | 42 |
| 105 | 127 |
| 100 | 119 |
| 106 | 17 |
| 106 | 35 |
| 109 | 465· |
| 100 | 119 |
| 112 | 19 |
| 113 | 664 |
| 114 | 11 |
| 100 | 119 |
| 136 | 29 |
| 100 | 119 |
| 143 | 10 |
| 100 | 119 |
| 144 | 27 |

[Rhea v. The State.]

APPEAL from the Circuit Court of Calhoun.

Tried before HON. LEROY F. BOX.

Samuel Rhea was convicted of murder in the second degree and appeals.

The testimony for the State tended to show that the defendant and the deceased, Allen Daniel, got into a quarrel at the house of one Lou Morgan about a woman by the name of Annie Talbot; that on said Annie Talbot's refusing to leave the deceased, the defendant said he would kill the deceased, and, as he backed away from where the deceased and the woman were sitting, deceased following him, he shot three times, killing deceased. The testimony for the defendant tended to show that the said Allen Daniel was advancing upon the defendant with his hand on his hip pocket, in the act of drawing a pistol, when the defendant shot him. The court, among others gave the following charges : (8) "Unless the jury believe, beyond all reasonable doubt, that Rhea killed Daniel with a wickedness or depravity of heart towards the deceased, or mankind in general, there is no murder in this case." (10) "Unless the jury believe from the evidence, beyond all reasonable doubt, that Rhea is guilty, they should return a verdict of not guilty." (11) "Unless the jury believe from the evidence to a moral certainty, that the defendant, Rhea, was not acting in self-defense, then they should let the defendant go free." (12) "Unless the evidence excludes every reasonable hypothesis except that of the guilt of the defendant, the jury should find the defendant not guilty." (15) "The court charges the jury that the defendant is presumed to be innocent until he is proven beyond all reasonable doubt to be guilty." The defendant requested the court to give the following written charges, and separately excepted to the refusal to give each of them as asked : (17) "The court charges the jury that they should consider the testimony of the defendant the same as they do the testimony of any other witness; and because he is the defendant is no reason, of itself, why they should discredit him." (18) "In considering whether Rhea or Daniel was the aggressor in bringing on the difficulty in which Daniel was killed, the jury should consider whether or not Daniel's character was that of a quarrelsome and fighting man ; for the law says that Rhea was justified in taking more prompt and decisive measures of defense if Daniel was the assailant, and was a man of known violent and fighting nature." (20) "The court charges the jury that in weighing the evidence of Lou Morgan and Hattie Ables, and in determining what credit the jury will

give their testimony the jury may consider their character for chastity and virtue."

J. H. CALDWELL, W. J. BROCK, A. P. AGEE and D. D. MC-LEOD, for the appellant, cited, *Pierson v. State*, 99 Ala. 148; *Mitchell v. State*, 60 Ala. 26, 32; *Hornsby v. State*, 94 Ala. 65.

WM. L. MARTIN, Attorney-General, for the State. While it may be true as contended that under the rule laid down in *Pierson v. State*, 99 Ala. 148, and followed in *Heath v. State*, 99 Ala. 179, the charge given at the instance of the State is defective in that it does not state the degree of proof required to convict; yet, unlike either of those cases, *it appears from the other charges in the record that the court did instruct the jury as to the degree of proof and laid down the doctrine of reasonable doubt in every conceivable phase*; hence the jury could not possibly have been misled by the charge in question. *Cunningham v. State*, 73 Ala. 51.

There is nothing in the other questions presented.

STONE, C. J.—Charges 8, 10, 11, 12 and 15, given by the court in this case, each properly stated the law as to reasonable doubt; and each declared in substance that defendant was entitled to acquittal, unless the testimony convinced the jury beyond reasonable doubt that he was guilty. These charges are so varied in phraseology and presentation as to meet every phase and tendency of the testimony, and every hypothesis it justified counsel in assuming. They seem to have covered the entire field. Yet, the court, at the instance of the prosecution, charged the jury "that if they believed from the evidence that the defendant formed the design to kill Allen Daniel unlawfully, and that in pursuance of such formed design did kill Allen Daniel in this county, and before the finding of this indictment, then the defendant is guilty of murder." This was excepted to.

It will be observed that this charge, considered by itself, is faulty in not stating the proper measure of conviction the testimony must produce on the minds of the jury to justify a verdict of guilty. Believing from the testimony that the facts exist, is not enough. The belief must be so strong, as to leave no reasonable doubt of its truth. Such is the rule in criminal cases. *Pierson v. State*, 99 Ala. 148; *Heath v. State*, *Ib.* 179.

The law is tenderly regardful of human life and of human liberty. Hence the rule, which requires a higher measure of proof in criminal prosecutions than in civil suits. Charges

if given separately, and separately excepted to, must, as a rule, be construed separately. Each should assert a correct legal proposition, when applied to the testimony.

Under our rule bad general character as a generic proposition, may be given in evidence to impeach a witness. It is not confined to character for truth and veracity. *Ward v. State*, 28 Ala. 53; *Holland v. Carnes*, 53 Ala. 83; *Motes v. Bates*, 80 Ala. 382; *Davenport v. State*, 85 Ala. 336. But the fact that a woman is a prostitute, while it is one of the constituents that make up her general character, cannot be singled out and made a special ground for impeaching her character for veracity. *Birmingham Union Railway Co. v. Hale*, 90 Ala. 8; *McInerny v. Irvin Ib.* 275. Charge 20 asked by defendant was properly refused.

There was testimony tending to show that "deceased had a bad character for fighting, turbulence, violence and quarrelsomeness." There was also some testimony tending to show that Daniels, the deceased, made the first hostile demonstration, but the proof was in conflict on this inquiry. In *De Amon's* case, 71 Ala. 351–61, we said: "In this connection, the testimony offered to prove the violent or dangerous character of the deceased, if believed, should be considered. On all doubtful questions as to who was the aggressor, the violent or blood thirsty character of the deceased, if such be his character, enters into the account. More prompt and decisive measures of defense are justified, when the assailant is of known violent and blood thirsty nature. But this principle is confined to defensive measures. It furnishes no excuse or palliation for aggressive action, nor when the difficulty is brought on or sought by the accused." This principle was approved in *Lang v. State*, 84 Ala. 1; *Smith v. State* 88 Ala. 73; *Karr v. State*, ante page 4. Under this principle charge 18 was asked by defendant. Its refusal was excepted to, and is urged as ground for reversal. We do not wish to impair or qualify that doctrine, but we are unwilling to extend it.

All charges asked should be moulded and shaped, so as to be in accord with some phase of the testimony; and if not correct expositions of the law when construed in the light of the testimony bearing on them, they should be refused. The hypothesis of the charge asked was that the jury should consider whether the character of Daniels, the deceased, was that of a "quarrelsome and fighting man." Neither of the words violent, dangerous or bloodthirsty is found in the hypothesis. The jury might have found that Daniels was a quarrelsome, fighting man, and yet failed to

be convinced that he was a dangerous, or blood-thirsty man
Defendant killed the deceased with pistol shots; and if this
charge had been given, and if the jury had found that
Daniels was simply a quarrelsome, fisticuff fighter, then
they were instructed to consider such character in deter-
mining who was the aggressor in bringing on the difficulty.
There was no proof that Daniels was armed, or that he had
the character of being a dangerous or blood-thirsty man,
who fought with weapons. We are unwilling to extend
the doctrine of *De Amon's* case to the facts hypothesized
in charge 18. Applied to the tendencies of the testimony,
it would be calculated to mislead the jury. The charge
was rightly refused.

Following *Pierson's* case, the court reverses the convic-
tion in this case on the single point of the charge given at
the instance of the prosecution.

Reversed and remanded.

