# Buchanan v. State.

*Indictment for Larceny from a ·Storehouse.*

1. *Larceny; evidence as to property found in possession of person other than defendant.*—On a trial for the larceny from the storehouse of S. of ten bolts of calico, one dozen hair combs, twelve yards of elastic, and various other articles, S. testified that he found certain articles at defendant's house, and also that he found at the house of the defendant's mother, who lived a short distance from the defendant, a dress pattern of calico, a hair comb and a piece of elastic; the only further identification of the property found being the testimony of S. that "from the color and quality of the goods found at the house of the defendant he would indentify them as the goods stolen from his store." All the goods, found at both places, were offered in evidence. *Held*, that it was error to admit the evidence as to goods found at the house of the defendant's mother.

2. *Same; identifying stolen property by comparison with other property.*—On a trial for the larceny of various articles of merchandise from the storehouse of S., G., another merchant from whoms had purchased the property stolen, produced in court other articles, which he testified corresponded in color and quality with the the goods shown him as having been found at the defendant's house. *Held*, that it was error to permit the State to introduce in evidence the goods found, and also those produced in court by G., for the purpose of comparison, as the means of establishing the identity of the goods found with those stolen from S.

3. *Opinion evidence, impeachment of.*—On a trial for the larceny from the storehouse of S. of various articles of merchandise, S. having testified to finding certain articles at the house of the defendant, and that "from the color and quality of the goods so found at the house of the defendant he would identify them as the goods stolen from his store," it was error to exclude the testimony of an experienced merchant, introduced by the defendant, that in his judgment a merchant could not identify his goods from color and quality only.

4. *Impeaching defendant·testifying for himself.*—When, in the trial of a criminal case, the defendant testifies in his own behalf, he subjects himself to impeachment as any other witness.

5. *Evidence as to character; competency of.*—A witness introduced to impeach T. stated that he lived for the last ten or twelve years about twenty-five miles from T., and that the only way he knew the character of said T. in the community where he now lives was that a year or two ago a man who lived about twelve miles from T. told witness that T. was "the same old lying T." *Held*, that the witness

[Buchanan v. State.]

was not competent to testify as to T.'s character.

6. *Charge invading the province of the jury, on question of sufficiency of circumstantial evidence in a criminal case.*—A charge in a criminal case that "to justify a conviction on circumstantial evidence, it was not necessary that the circumstances be as strong as the positive testimony of a single creditable witness; that, if a charge had been asked aserting that, before a conviction could be had on circumstantial evidence, the evidence should be as strong as the positive testimony of a single creditable witness, the court would have refused the charge,"—was erroneous, as invading the province of the jury.

APPEAL from the Circuit Court of St. Clair.

Tried before the Hon. GEORGE E. BREWER.

The appellant, John Buchanan, was convicted under the indictment mentioned in the opinion, and appeals. The material facts are stated in the opinion, except the the following : The defendant have testified as a witness in his own behalf, the State introduced a witness, who was asked "if he knew the general character of the defendant." The defendant objected to this question, on the ground that the State could not put the character of the defendant in issue. The Solicitor then stated that the purpose of putting the defendant's character in issue was to go only to his credibility as a witness, and for no other purpose. The court then overruled defendant's objection, and to this ruling the defendant excepted. The witness then stated that he knew the general character of the defendant, and that such character was bad. The defendant objected to this answer, and moved the court to exclude it from the jury, on the ground that, if by reason of the defendant having testified as a witness in his own behalf, the State could inquire into his character, the inquiry would be limited to his character for truth and veracity, and not extended to the general character of the defendant. The court overruled the defendant's objection and motion to exclude the testimony, and to this ruling the defendant duly excepted.

M. M. SMITH, J. A. EMERY, and N. B. SPEARS, for appellant.

W. C. FITTS, Attorney-General, for the State.

HEAD, J.—Indictment for larceny from a storehouse

of sundry articles of merchandise, the property of John Shurbett. Shurbett testified that on February 4th, 1895, there was stolen from his storehouse some eighty or ninety dollars worth of merchandise, consisting of ten pieces or bolts of cloth, being calico, domestic and cotton checks, one and one-half dozen pairs of jeans pants, one dozen pairs of suspenders, some ladies' hose, gents' half hose, one dozen balls of thread, about twelve yards of elastic, several papers of pins, several papers of shoe tacks, one dozen hair combs, one and one-half dozen cotton shirts, some tobacco, and a part of a sack of green coffee; that on April 8th following, he, with one Lee, a constable, and others, went with a search warrant, to defendant's house—about seven or eight miles from witness' store,—and there found four or five small children's dresses, made of red figured calico, a quilt top which contained pieces of the same kind and quality of calicoes, one or two hair combs and seven balls of ball thread. They broke open defendant's trunk (he being absent), and found therein one pair of dark gray jeans pants, two cotton shirts, one red cotton handkerchief, three or four papers of shoe tacks, three or four papers of pins, two pairs of new suspenders, one pair of ladies black hose, and one pair of men's socks. One of the shirts had been worn, the other not. They also found in the house of defendant's mother, which was a few hundred yards from, and in sight of, defendant's house, a dress pattern of calico, a hair comb and a piece of elastic. All these goods, found at both places, were produced by the witness in court, and offered in evidence by the State. There was objection to the evidence as to the goods found at defendant's mother's house, and we think the court erred in admitting it. The only further identification of these goods with the goods stolen made by the witness Shurbett was that "from the color and quality of the goods so found at the house of defendant he would identify them as the goods stolen from his store on the said night of the 4th of February." It appeared in evidence that Shurbett had purchased the goods which had been stolen from another merchant in the county—one H. B. Guy. Guy being introduced, produced in court certain articles from his store, among them pants, which he testified corresponded in color, quality of goods and lot number with the pants shown

him as having been found at defendant's house, and
that the shirts and suspenders, also shown him, corres-
ponded, in color and quality, with the shirts and sus-
penders he had brought from his store; that he sold
Shurbett pants, shirts, suspenders, calico, shoe tacks,
ball thread, hair combs, ladies and gents hoes and
elastic, which corresponded in color and quality with the
goods shown to witness, and identified as having been
found at the houses of defendant and of defendant's
mother. Afterwards, the State was permitted to intro-.
duce in evidence the goods found, and also those pro-
duced in court by Guy, for the purpose of comparison,
as the means of establishing the identity of the goods
found with those stolen from Shurbett. We are aware
of no principle of law which authorizes such a compari-
son by the jury, and have been referred to no authority,
and can find none, which justifies it. The court erred
in admitting the goods produced by Guy. Aside from
the similarity of the articles, shown by their general de-
scription, there was no evidence going to identify the
goods found with those stolen, except the statement of
the witness Shurbett that "from the *color* and *quality* of
the goods so found at the house of defendant, he would
identify them as the goods stolen from his store on the
said night of the 4th of February." It will be observed
that this statement is no more than the expression of the
opinion of the witness, based upon the color and quality
of the goods, that the goods found at defendant's house
were those which had been stolen from him. The de-
fendant introduced a witness—a merchant of the county
of large experience in the business—and asked him, if,
in his judgment, it was possible for a merchant to
identify his goods from color and quality only. To which
he replied that in his judgment a merchant could not so
identify goods. On motion of the State, this evidence
was excluded. We think the defendant was entitled to
have the jury consider this opinion of the witness, who
was expert in such matters, in connection with the
opinion of Shurbett that he could identify his goods
from color and quality; and that the court erred in ex-
cluding the evidence.

When a defendant testifies on the trial of the cause in
his own behalf, he subjects himself to impeachment as
any other witness.—*Dolan v. The State*, 81 Ala. 11;

*Mitchell v. The State*, 94 Ala. 68; *Jones v. The State*, 96 Ala. 102; and later cases. The witness Dunlap, who was introduced to impeach defendant's witness John Turner, stated that he lived, for the last ten or twelve years, about twenty-five miles from Turner, and that the only way he knew the character of said Turner in the community where he now lives was that a year or two ago a man who lived about twelve miles from Turner told him that said Turner was the same old lying John Turner. If this is all the witness knew of Turner's character, he was not competent to speak on that subject.

The charge given by the court *ex mero motu*, to which exception was reserved, clearly invaded the province of the jury. It was: "That to justify a conviction on circumstantial evidence, it was not necessary that the circumstances be as strong as the positive testimony of a single creditable witness; that if a charge had been asked asserting that, before a conviction could be had on circumstantial evidence, the evidence should be as strong as the positive testimony of a single creditable witness, the court would have refused the charge." Neither the direct instruction set forth in the first sentence, nor the supposed charge set forth, argumentatively, in the second sentence of this instruction is a matter for the court. It is for the jury to say how strong the circumstances must be, in order to satisfy their minds, beyond a reasonable doubt, of the defendant's guilt. *Banks v. The State*, 72 Ala. 522.

Let the defendant remain in custody until discharged by law.

Reversed and remanded.