# Sanford v. The State.

## Murder.

(Decided Dec. 21, 1911.  57 South. 134.)

1. *Homicide; Evidence; Explanatory of Deceased's Acts.*—Where the charge was murder and the defendant sought to justify on the doctrine of self-defense, and the killing occurred at the home of the defendant, it was competent to introduce testimony showing an engagement between defendant and the deceased to go to town together on that day, as explanatory of the conduct and object of the deceased in going to the defendant's house.

2. *Same.*—It was not competent to show what was said and done by the defendant or how he acted towards the wife of the deceased after the shooting, as his good or ill will towards the wife of the deceased was not relevant to any issue.

3. *Same; Clothing.*—When properly identified, clothing worn by deceased at the time he received the fatal wound are admissible.

4. *Evidence; Self Serving Declarations.*—What the defendant did or said to anyone, not a part of the res gestae, and not a part of a conversation brought out by the state, was inadmissible as a self serving declaration.

5. *Evidence; Character; General Reputation of Deceased.*—Neither the reputation of the deceased (there being no evidence of his drinking on the occasion referred to) as a drinking man, nor his general reputation, was admissible; but only his character as a violent, turburlent or blood-thirsty man.

6. *Same; Threats; Particulars of Difficulty.*—While threats may be proven without objection under proper circumstances, the particulars of the difficulty leading up to the threats, are not admissible.

7. *Witnesses; Cross Examination; Discretion.*—The legitimate limits of cross examination rests largely in the discretion of the trial court, and are not revisable unless abuse is shown.

8. *Same; Impeachment; General Reputation.*—Where defendant testifies as a witness in his own behalf, his general reputation becomes admissible for purpose of impeachment.

9. *Homicide; Instructions; Self Defense.*—A charge on self defense which omits in hypothesis freedom from fault in bringing on the difficulty, is properly refused, although predi-

6 CA

cated on the right to stand and defend his home even to the taking of human life, without being under the necessity of retreating; since the home is for the purpose of defense, and not for offensive or aggressive operation, and in order to claim its protection the defendant must be free from fault in bringing on the difficulty, and must act under the impending necessity to protect himself or home.

10. *Same.*—Charges on self-defense which ignore the question of imminent danger to life or limb, or the impending necessity to kill to save life or prevent great bodily harm, are properly refused.

11. *Charge of Court; Argumentative Instructions.*—A charge asserting that the law does not require that a man who is without fault shall lose his life in order to spare that of his neighbor, and that we are not commanded to love our neighbor better than ourselves, is a mere argument and properly refused.

12. *Same; Singling Out Evidence.*—Charges which single out and give undue prominence to the particular parts of the testimony are properly refused.

APPEAL from Fayette Circuit Court.

Heard before Hon. BERNARD HARWOOD.

Boss Sanford was convicted of murder in the second degree and he appeals. Affirmed.

The following charges were refused to defendant:

5. I charge you, gentlemen of the the jury, if you believe the defendant shot the deceased in his home, or if you also believe deceased was assailing defendant in his own home, the defendant did not have to retreat, but had the protection of his home to excuse him from retreating, and the law does not require one to fly from his home and give up the protection of his house to his adversary. 9. I charge you that the law does not require that a man who is without fault shall lose his own life in order to spare that of his assailant. We are not commanded to love our neighbor better than ourselves. 10. I charge you, that if you believe the defendant was not at fault in bringing on the difficulty; that he was assailed by the deceased in his own home, that he could then stand his own ground and defend himself even to the extent of taking human life. 12. I charge you that in the eyes of the law every man's home

is regarded as his castle, from which he is not required to retreat, and if assailed, he is justifiable in taking life in order to save his own life or his body from great harm. 45. If the jury believe from the evidence that the deceased had threatened to kill the defendant, and if, at the time of the killing, the deceased was manifesting an intention of carrying out such threats into execution, or that from the acts of the deceased at the time of the killing, it would have appeared to a reasonable mind that the deceased was attempting to execute the threats against the defendant, then the defendant was justified in taking the life of said deceased. 48. I charge you that the law is that every person has the right to defend himself, and may take the life of his assailant in defending himself from death or great bodily harm; and the necessity need not be actual, but the circumstances must be such as to impress him with the reasonable belief that such necessity is impending. 50. The court charges the jury that the defendant is authorized under the statute to testify in his own behalf, and the jury have a right to give all the credit to his own statement. 57. I charge you that if you believe that deceased has made threats against defendant's life, which had been communicated to him you may consider the same as tending to show a reasonableness for defendant's apprehension of danger of death or serious bodily harm from the attack made upon him by the deceased, and if the jury would believe the deceased was the aggressor, then they must acquit the defendant. 59. I charge you that we are not commanded to lose our own life in order to save that of one who assails it, and when assailed in the home of defendant or yard or place of business, he need not retreat, but may use measures to save his own life even to the extent of killing his

assailant, if he was without fault in bringing on the difficulty.

BEASLEY & WRIGHT, for the appellant. The court erred in permitting it to be shown that the deceased and the defendant had an engagement to go to town together on the day of the killing.—*Crawford v. The State*, 112 Ala. 1; *Whittaker v. The State*, 106 Ala. 30. The court erred in refusing to permit the defendant to show all that was said and done by him immediately after the difficulty as the state had been permitted to bring out part of it.—*Burns v. The State*, 49 Ala. 370; *Webb v. The State*, 100 Ala. 47; *Drake v. The State*, 110 Ala. 9. There was evidence tending to show self-defense and the defendant should have been permitted to show the general reputation of deceased.—*Williamson v. The State*, 74 Ala. 18; *Rutledge v. The State*, 8 Ala. 85; *Rhea v. The State*, 100 Ala. 119; *Webb v. The State, supra*. The entire conversation in which threats were made by deceased against the defendant should have been admitted.—*Drake v. The State, supra*. The character of the defendant was not admissible.— *Holmes v. The State*, 88 Ala. 26. Charge 5 should have been given.—*Harris v. The State*, 96 Ala. 24; *Naugher v. The State*, 105 Ala. 26; *Brindley v. The State*, 89 Ala. 34. Charge 9 should have been given.—*Perry v. The State*, 94 Ala. 25. Charge 10 should have been given. —*Naugher v. The State, supra; Webb v. The State, supra; Christian v. The State*, 96 Ala. 89. On these authorities, charge 12 should have been given. Charge 45 should have been given.—*Karr v. The State*, 100 Ala. 4; *Webb v. The State, supra; Christian v. The State, supra*. On these same authorities charges 50 and 59 should have been given.

[Sanford v. The State.]

Robert C. Brickell, Attorney General, and W. L. Martin, Assistant Attorney General for the State. The fact that the defendant and deceased having an engagement to go to town that day together was explanatory of the decased's presence at the home of the defendant, and was admissible. The clothing worn by the deceased when he was shot, were properly identified, and were admissible.—*Andrews v. The State,* 159 Ala. 14. Self serving declarations are not admissible, especially when made subsequent to the commission of the offense.— *Ferguson v. The State,* 134 Ala. 63; *Henderson v. The State,* 70 Ala. 23. The reputation of the deceased may not be shown further than that he was a violent, turbulent or blood-thirsty man.—*DeArman v. The State,* 71 Ala. 252; *Rhea v. The State,* 100 Ala. 119. In the absence of evidence that the deceased was drinking at the time, his reputation as a drinking man is not admissible.—*Hussey v. The State,* 87 Ala. 121; *Cauley v. The State,* 92 Ala. 71. Details of a former difficulty are never admissible.—*McAnally v. The State,* 74 Ala. 9; *Gordon v. The State,* 140 Ala. 29. The defendant testified as a witness and hence, it was competent to show his general reputation.—*Sweatt v. The State* 156 Ala. 85; *Jones v. The State,* 96 Ala. 102. The charges requested by the defendant and refused either omitted some essential element of self-defense or were arguments, and hence, were properly refused. Charge 4 contains a disputed hypothesis of fact.—*Payne v. The State,* 148 Ala. 609; *A. G. S. v. Hill,* 93 Ala. 514.

PELHAM, J.—Under an indictment charging murder in the second degree, the defendant was convicted of the offense charged. The defendant admitted the killing, but claimed that he acted in self-defense; the only eye-witness to the homicide being the defendant.

Boss Sanford, the defendant, was the son-in-law of Yancy Sexton, the deceased, and the parties lived on the same place, close neighbors, but in separate houses, their respective homes being about two hundred yards apart, Sanford, the son-in-law, renting from his father-in-law, Sexton.

On the morning of the tragedy, Sexton left his home between daylight and sunup and went over to the house of Sandford, where he was shot and killed by Sanford in the back yard near the steps leading into the house. No one else, save the principals, was present or saw the shooting, and the state relied for a conviction on the circumstances connected with and leading up to the shooting, the physical conditions surrounding the dead body of the slain party when found, the nature and location of the wound, etc., and the statements made by the defendant immediately after the shooting.

The wife of the deceased testified that when the deceased left home to go to the defendant's house he had no weapon, that he carried a bucket of slop and went past to the pasture to feed the hogs, that in about ten minutes after the deceased left home she heard the gun fire in the direction of Sanford's house, whereupon she ran to the door of her house and heard the defendant's wife (her daughter) screaming, and that she immediately went over to Sanford's house, where she found her husband lying in the back yard dead near the steps leading into the house with a gunshot wound in his body. This witness's testimony is confused and contradictory with reference to seeing the axe and where it was lying with reference to the deceased body, but the state's witness Butler, who arrived on the scene of the killing at about the same time as Mrs. Sexton, testified that the axe was lying "right out in front of the body"

and that the handle was across his legs. Several other witnesses introduced by the state who came to the place only a few minutes after the witness Butler testified to substantially the same facts as to the position in which the body and axe were found.

The wound on the deceased's body was shown by the state to be about one and one-half inches in diameter, and about one and one-half inches from the hip bone, "kinder back" and ranging "straight through," as expressed by one of the witnesses. All of the state's witnesses who came to the scene of the shooting, including the wife of the deceased, testified that the defendant stated to them when they came up immediately after the shooting that Yancy was advancing with an axe drawn on him (defendant), and that he had to shoot in self-defense. The defendant proved threats made by the deceased, and as a witness in his own behalf testified that the deceased came around the house with an axe and called to him (defendant) to come out, that he was going to kill him. The top of the back steps of the house was about three feet from the ground, and defendant testified that when deceased came up to the steps with the axe drawn and advancing on him in striking distance he reached around inside the door facing, picked up the gun, pointed it in the direction of deceased, and fired; that he was on the top step and that deceased was on the ground near the steps when he shot.

The state's counsel asked the wife of the deceased, when she was testifying as a witness in behalf of the state, if the deceased and defendant had an engagement to go to town on the day of the killing, and the witness was allowed to testify, against the objection of the defendant, that they did. This evidence was properly admitted as explanatory of the conduct and object of the

deceased in going to the home of the defendant. There was no error committed by the court in refusing to allow the defendant to show, on the cross-examination of Mrs. Sexton, what he said and how he acted towards her when she was on the way to his house after the shooting. The defendant's good will or ill will towards the deceased's wife was not an issue in the case. The shirt worn by the deceased at the time he was killed was sufficiently identified and was properly allowed to be introduced in evidence.—*Andrews v. State,* 159 Ala. 14; *Pate v. State,* 150 Ala. 10; *Holley v. State,* 75 Ala. 14.

The question asked the witness Butler on cross-examination, "What did he (defendant) tell you, what did he say to anyone?" was properly refused, as calling for a self-serving declaration on the part of the defendant that was no part of the *res gestae.* The declaration is not shown to be part of a conversation previously brought out by the state, and was not offered as such, but as independent statements constituting part of the *res gestae.*

The questions asked the witness Blackburn on cross-examination, as to what the defendant said when the witness met him, referred to a time subsequent to and disconnected with the killing when the witness met the defendant between his home, a quarter of a mile distant, and the defendant's home, and was clearly inadmissible.

The general reputation of deceased was not admissible, but only his character as a violent or turbulent man.—*Montgomery v. State,* Infra. 56 South. 92; *Rhea v. State,* 100 Ala. 119; *Smith v. State,* 88 Ala. 73; *Lang v. State,* 84 Ala. 1; *De Arman v. State,* 71 Ala. 352; *Eiland v. State,* 52 Ala. 322.

[Sanford v. The State.]

Nor was the reputation of the deceased as a drinking man admissible. There was no evidence that the deceased was or had been drinking on the occasion in question.—*Cauley v. State*, 92 Ala. 71; *Husey v. State*, 87 Ala. 121; *Franklin v. State*, 29 Ala. 14.

The questions asked the witness Powers with reference to what the deceased said about burning the fence for stove wood at the time he (deceased) made threats was nothing more than the hearsay particulars of a former trouble or difficulty that caused the threats to be made, and were inadmissible. The threat was proven without objection, and the particulars of the trouble causing the threat to be made were properly not allowed.—*Bluett v. State*, 151 Ala. 41.

The legitimate limits of cross-examination, that are largely within the discretion of the court, were not exceeded in the cross-examination of the defendant. The questions asked in reference to the defendant's wife having cried out just before the deceased went to the house of defendant and what defendant said about this were relevant to show the purpose of the deceased's visit to the defendant's house, and also admissible for the purpose of laying a predicate on which to impeach the witness.

The defendant having testified as a witness in his own behalf, his general reputation was admissible.— *Sweet v. State*, 156 Ala. 85; *Buchannan v. State*, 109 Ala. 7; *Jones v. State*, 96 Ala. 103; *Mitchell v. State*, 94 Ala. 68; *Dolan v. State*, 81 Ala. 11.

Charge 5 requested by the defendant differs from the charge cited by appellant's counsel and set out in *Harris's Case* (96 Ala. 24) in that the charge in this case hypothesizes the jury's belief in the defendant's having shot the deceased while being assailed in his own home without regard to the belief being based upon the evi-

[Sanford v. The State.]

dence, while the charge in *Harris's Case* hypothesizes as a fact the defendant's having been assaulted in his own home. The natural effect calculated to be produced on the minds of a jury by this charge, including in the hypothesis a belief that the defendant, while being assailed, shot and killed the deceased, would be more like that which would have been produced by the charge in *Medlock's Case* (114 Ala. 6), which was held properly refused because not including freedom from fault in the hypothesis. Although the defendant was the only eye-witness who testified to the killing, yet it was shown by the testimony of one of the witnesses that the deceased went to the house of the defendant for the purpose of going to town with him as arranged between them in a friendly spirit the day previous, and it was clearly open to the jury to find on this evidence that the deceased went to the home of the defendant with no felonious intent or purpose to bring on a difficulty, and, so finding, it was with them to conclude that the defendant was not free from fault in bringing on the difficulty.— *Medlock's Case, supra.*

A man's house is his castle for purposes of defense, but not for offensive or aggressive operations, and he can claim the right to stand his ground and if necessary kill his adversary, without being under an obligation to retreat from his home only when free from fault in bringing on the difficulty and when acting under an impending necessity to protect himself or home.—*Watkins v. State,* 89 Ala. 82; *Gibson v. State,* 126 Ala. 59.

The law of self-defense as applicable to one's being under no obligation to retreat in his home was fully covered by charges Nos. 2, 3, 4, 8, 11, 17, 18, and 44 given at the request of the defendant, and the court cannot be put in error for refusing instructions which are fully or substantially covered by other instructions given at

defendant's request.—*Montgomery v. State,* 160 Ala.
7; *Boyd v. State,* 154 Ala. 9; *Parham v. State,* 147 Ala.
57; *B'ham Ry. Co. v. Rutledge,* 142 Ala. 195.

Charge 9 is a mere argument.

Charge 10 ignores the question of imminent danger
to life or limb, and the impending necessity to kill to
save life or to protect one's self from great bodily harm.

Charge 12 is bad for the same reason discusesd in
passing on the court's ruling as to charge 5.

Charge 45 ignores the question of freedom from fault
and imminent danger.

Charge 48 is misleading. In defining the right of a
person· to defend himself and kill his assailant, the
charge ignores the necessity of being free from fault in
bringing on the difficulty.

Charge 50 singles out the defendant's testimony, gives
undue prominence to it, and is incorrect as a statement
of law.

Charge 57 includes disputed facts in the hypothesis
and omits freedom from fault.

Charge 59 is argumentative. The principles of law
contained are covered by given charge No. 18.

There being no error shown by the record, the judg-
ment of conviction will be affirmed.

Affirmed.