# Styles *v.* The State.

### *Murder.*

#### (Decided June 19, 1912.  59 South. 668.)

1. *Homicide; Evidence; Self Defense.*—It is only after the introduction of some evidence tending to show that the defendant acted in self defense that evidence of previous threats by deceased against defendant and that deceased was a violent, turbulent and bloodthirsty man, becomes admissible.

2. *Same; Character of Deceased; Limitation.*—Evidence as to the general character of deceased, or that he was a straight man was not admissible in a prosecution for homicide where the defendant pleaded self defense, as evidence as to deceased's character should be confined to traits or characteristics which shed light on defendant's conduct in killing him.

3. *Same; Weapon.*—In a prosecution for murder, it was competent for the state to show that the possession of a weapon by deceased, was not occasioned by his hostile intention towards defendant, and that the defendant did not act under the impression that such was the fact.

4. *Same*—In order to explain the possession by deceased of a weapon, when the deceased had such weapon at the time of the difficulty in which he was killed, it was competent for the state to show that the deceased was a deputy sheriff.

APPEAL from Gadsden City Court.

Heard before Hon. JAMES A. BILBRO.

Bob Styles was convicted of homicide and he appeals. Reversed and remanded.

CULLI & MARTIN, for appellant. The court erred in permitting it to be shown that deceased was a deputy sheriff.—*Abernathy v. The State,* 129 Ala. 88; *Maxwell v. The State,* 89 Ala. 150. The court erred in permitting the general character of deceased to be shown.—*Sanford v. The State,* 2 Ala. App. 88; *Montgomery v. The State,* 2 Ala. App. 25; *DeArman v. The State,* 71 Ala. 352; *Rhea v. The State,* 100 Ala. 199. The court erred in refusing to admit threats made by the deceased. —*Olive v. The State,* 2 Ala. App. 79; *Knight v. The State,* 160 Ala. 58; *Ford v. The State,* 71 Ala. 383. Counsel discuss assignments of error relative to refused charges, with citation of authority, but in view of the opinion it is not deemed necessary to here set them out.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. Evidence of the bad character of the deceased for turbulence and violence, and of threats made by him against the defendant is not admissible until some evidence tending to show self-defense has been offered by the defendant, or appears from the evidence introduced by the state.—*Eiland v. The State,* 52 Ala. 322; *Bowles v. The State,* 58 Ala. 335; *Cleveland v. The State,* 86 Ala. 19; *Morrell v. The State,* 136 Ala. 44. It was not error to allow proof of the fact that the deceased was a deputy sheriff, since such evidence was explanatory of his having a weapon. On cross-examination a witnesses' knowledge of a person's character may be tested by inquiring as to particular acts, where such witness has testified to such good character.—*Andrews v. The State,* 159 Ala. 14; *Goodwin v. The tSate,* 120 Ala. 303; *Moulton v. The State,* 88 Ala. 116, and cases cited in the Attorney General's brief therein. The oral charge was not erroneous.—*Lacey v. The State,* 154 Ala. 65.

WALKER, P. J.—Evidence offered by the state tended to show that, as the deceased was walking along a path which was in front of a barber shop, and just after he had passed that place, the defendant came out on the porch of the barber shop and shot the defendant in the back. Testimony in behalf of the defendant tended to show that the deceased was a turbulent and bloodthirsty man; that on the day of the killing he had threatened to take the life of the defendant; and that, on his seeing the defendant as the latter came out of the barber shop, "he started his hand for his gun," and thereupon the defendant fired the fatal shot.

The court was not in error in sustaining objections by the state to questions asked on the cross-examination of witnesses for the state, which sought to elicit testimony as to threats made by the deceased against the defendant shortly before the killing, and as to the character of the deceased being that of a violent, turbulent, and bloodthirsty man. At the time those questions were asked, there was no evidence before the court which tended to show that the defendant acted in self-defense. On the contrary, all the evidence which had at that time been introduced tended to show that the killing was under such circumstances as to be unjustifiable, whether or not threats had been made by the deceased, and whether or not he was a violent and dangerous person. —*Lawson v. State,* 155 Ala. 44, 46 South. 259; *Teague v. State,* 120 Ala. 309, 25 South. 209.

When, in the further progress of the trial, testimony was adduced which had some tendency to prove that the defendant acted in self-defense, the court admitted evidence as to threats made by the deceased against the defendant, and as to the character of the deceased for turbulence and bloodthirstiness. The purpose of such evidence is to explain the conduct of the defendant by

showing the circumstances in which he acted, to bring
out the fact that he was really actuated by a reasonable
apprehension of death or great bodily harm, to shed
light upon the motive or purpose which influenced him
in resorting to the use of a deadly weapon.  As was said
of such evidence in the opinion rendered in the case of
*Storey v. State,* 71 Ala. 329, "it was relevant as having
a tendency to justify the belief in the prisoner's mind
of a peril enhanced by the dangerous character of his
assailant.  A ferocious, vindictive, and turbulent man is
reputed to be such because of the frequency with which
he executes his revenge, or gives expression, by constant
overt acts, to his animosity.  A demonstration on his
part, especially when preceded by recent and violent
threats, may create reasonable apprehension of danger,
when the same conduct on the part of a notoriously
peaceable or timid man would be regarded as entirely
harmless.  It is quite true that no one can, without
lawful excuse, kill a bloodthirsty ruffian any more than
he can the most orderly citizen, but it is plain that an
overt act done by the former may reasonably justify
prompter action, as a necessary means of self-preserva-
tion, than if done by the latter." It has many times
been recognized that the controlling, if not the sole,
purpose in admitting such evidence is to enable the
jury to consider the defendant's claim that he acted in
self-defense in the light of his knowledge of the char-
acter of the person with whom he was dealing.—*Lang
v. State,* 84 Ala. 14. South. 193, 5 Am. St. Rep. 324;
*Smith v. State,* 88 Ala. 73, 7 South. 52; *DeArman v.
State,* 71 Ala. 352; *Rhea v. State,* 100 Ala. 119, 14
South. 853; *Tribble v. State,* 145 Ala. 23, 40 South.
938.

Such being the purpose of the admission, at the in-
stance of a defendant in a homicide case, of evidence

as to the character of the deceased, such evidence is confined to the traits or characteristics of the deceased which shed light on the defendant's conduct in killing him; and evidence as to his general character, or as to elements of it having no bearing upon that inquiry, is not admissible.—*Montgomery v. State,* 2 Ala. App. 25, 56 South. 92; *Sanford v. State,* 2 Ala. App. 81, 57 South. 134.    Over the objections of the defendant, the court permitted the state to rebut the evidence offered by the defendant as to the turbulent and bloodthirsty character of the deceased by evidence as to his general character.    On the cross-examination of W. S. Painter, a witness for the defendant, the state was permitted to interrogate him on that subject.    In reply to a question as to the deceased's general character, the witness said:  "As far as I know, Mr. Birt (the deceased) was a straight man."    Exceptions were duly reserved to the action of the court in overruling objections to the question, and in overruling the motion to exclude the answer, and in admitting testimony of other witnesses to the effect that the general character of the deceased was good.

We are of opinion that the court was in error in its rulings in this connection.    It cannot be said that the testimony so admitted had any real tendency to rebut the evidence offered by the defendant to the effect that the deceased was a turbulent and dangerous person in his relations with one towards whom he entertained feelings of hostility.    Of course, evidence tending to show that the character of the deceased was that of a man of peaceable disposition, who was slow to adopt offensive measures, would have had a tendency to rebut evidence offered by the defendant, and to show that he was not under an actual or reasonably apparent necessity of shooting in self-defense before the deceased had

drawn a weapon, or indicated in some plainly unequivocal manner a purpose to inflict upon the defendant serious bodily harm. One may have the reputation of being "a straight man," and also that of a person whose passions, when aroused, are violent and ungoverned, so that, in the event of a personal difficulty, his adversary may look for safety only in prompt measures of self-defense. On the other hand, one may be reputed to be a "crook," from whom personal violence is not to be expected by another, who appears to be prepared to defend himself. Evidence of the character of the deceased and of the defendant's knowledge of it is favorable to the defendant, who claims that he acted in self-defense, in so far as it furnishes a basis for an inference that he acted on a conviction of serious impending danger to himself; and it is unfavorable to him, in so far as it furnishes a basis for an inference that he did not really apprehend death or serious bodily harm at the hands of the deceased. Evidence as to traits or characteristics of the deceased which cannot be supposed to have had a controlling influence upon his conduct in the excitement of a personal difficulty or to have impressed his adversary with a sense of the presence or absence of serious peril in that event, can shed no light when the inquiry is as to whether his slayer, in killing him, was governed by a sense of a necessity of so doing, in order to save himself, or was actuated by some other motive. The result of the rulings of the court was to open up an inquiry as to features or aspects of the deceased's character or reputation which had no pertinency to the question of the defendant's guilt or innocence of the charge made against him. The admission of such evidence was calculated to mislead the jury to a rejection of the defendant's claim of self-defense on

considerations having no proper bearing upon the question raised by that claim.

It was permissible for the state to offer evidence having a tendency to prove that the deceased's possession of a pistol may not have been occasioned by his hostile intentions against the defendant, and that the defendant did not act under the impression that such was the fact. In the absence of other explanation of the fact, additional significance, to which it may not have been entitled, might have been given to the evidence of the threats made by the deceased shortly before he was killed by the fact that he had a pistol on his person when he was shot. In view of the common knowledge that deputy sheriffs frequently bear arms, it was proper to admit evidence that the deceased was a deputy sheriff. It was for the jury to say whether it was that fact, or the existence of his hostile purpose towards the defendant, that explained his possession of the pistol, and what impression may have ben made upon the mind of the defendant by the deceased's indication that he was armed. With the evidence of this circumstance before them, the jury were the better enabled to consider the defendant's conduct in the light of the situation as it was presented to him at the time he fired the fatal shot.

It is not deemed necessary, for the purposes of another trial, to discuss other rulings which the record presents for review. For the error above mentioned, the judgment must be reversed.

Reversed and remanded.