7 So.2d 770

## NOBLES v. STATE.

### I Div. 395.

Court of Appeals of Alabama.
March 17, 1942.

Rehearing Denied April 7, 1942.

C. L. Hybart, of Monroeville, for appellant.

Thos. S. Lawson, Atty. Gen., and Wm. H. Loeb and J. W. Arbuthnot, Asst. Attys. Gen., for the State.

---

[1] Ante, p. 424.

**BRICKEN, Presiding Judge.**

The homicide, complained of in the indictment, appears from all the evidence to have been a most unfortunate one, and grew out of a trivial and unimportant matter. So far as the record shows, there were no hard feelings or ill will existing between the deceased and the defendant, nor had there ever been.

It appears that the son of deceased had been working for appellant and on "pay day" was due the sum of $14.95. That on that day defendant paid him the sum of $10 and gave him a paper showing for the balance of $4.95. On the day of the difficulty defendant and his son were approaching the office of W. T. Smith Lumber Company, in Fountain, Monroe County, they were travelling in a pick up truck and upon nearing said office that deceased was talking to Mr. Orchard, and defendant testified:

"That when they drove on the lot there that about the time they got to the railroad the deceased left Mr. Orchard and came in the direction of him and as they drove up the deceased said 'Wait a minute,' hailed us down, flagged us; deceased was walking; that he stopped the car. The deceased said 'You owe my boy $4.95,' and he said 'Yes, we owe your boy $4.95 Mr. Henderson,' that 'We ran short of funds on the week before and we will get it Saturday for you. We will finish paying you up.' The deceased said 'No, you are going to pay me up now.' The deceased had a piece of paper in his hands; that he handed the piece of paper over in the truck and said 'It's $4.95 more and you are going to pay it now;' that he told the deceased that he would get the money from Mr. Orchard to pay it; the deceased said 'No, you are going to pay me now' and that about that time he was out with his knife; the deceased was standing on the ground and the first thing that he saw was the knife and the deceased came running around the truck with it; that he was sitting in the truck at the time; that by the time he got out of the truck the deceased was up even with the left front fender of the pick-up and was in striking distance of him and when he jumped out of the truck he just reached back and picked something and slapped him with it; that the deceased made an effort to cut him then, that he made a rake at him with his knife, like that (illustrating); that he slapped him with a clutch disk (which was shown him and which was a round piece of iron). That when he slapped him the deceased staggered back 3 or 4 steps, probably, or maybe two or three, and fell; that he didn't know what became of the knife; that he didn't see a knife thereafter, didn't think he did.

"Q. What did you do then, Mr. Nobles? A. I got down there to help him and to rub him on his hands; I called for some water; Mr. McDonald came down there and went back and brought some water; Mr. McDonald then went back and got the camphor after he brought the water.

"Q. What did you do with the camphor? A. I rubbed it on Mr. Henderson's face; that they carried him to the commissary porch; that he didn't think that he saw Mr. McDonald put a knife in the deceased's pocket; that he carried him and put him on the commissary porch; that he worked there with him; that he didn't owe Mr. Henderson anything himself."

There was other evidence of the same import as the foregoing.

A succinct "statement of the facts" is incorporated in brief of the Attorney General and, as there appears, is as follows: "The undisputed evidence in this case disclosed that on the 18th or 19th of October, 1939, in an encounter with this appellant, one Robert Henderson, a man about sixty-five years of age, was killed by having been struck with a piece of iron or steel, said to be an automobile clutch disc. Appellant does not deny striking the fatal blow nor using the means attributed thereto. Appellant contends, however, that the blow was struck in self-defense in that Henderson, following a dispute concerning a debt due deceased's son, approached appellant, who at the time was seated in the cab of a truck with his son, brandishing a knife. It is appellant's contention that in order to protect himself he was forced to seize the weight and strike the deceased. All of the State's witnesses, however, deny the presence of a knife. Thus a jury question was established as to whether the appellant acted in self-defense or not."

■ Appellant is correct in his insistence that the testimony showing the killing of deceased also had the tendency to show beyond peradventure that in striking the single blow he had no intention of killing him, and the immediate subsequent conduct of defendant tends to bear out this insistence. However, as stated by the Attorney General, supra, a jury question was presented by the testimony. In submitting this case to the jury the trial court delivered an excellent oral charge, full and complete and fair. The court also gave at request of defendant numerous special written charges which were in line and of the same import as the court's oral charge.

Appellant insists, however, there was error in the action of the court in refusing his special written charge No. 13, which reads as follows: "The Court charges the jury that if they find from the evidence that the deceased, at the time the blow was struck was attempting to make an assault on the defendant and that the defendant, in resisting said assault used force not greatly disproportionate to the character of the assault, and death accidentally resulted, this would be self-defense, and the jury should acquit him."

In support of the foregoing insistence appellant states: "This charge was approved as being a correct charge in the case of Martin v. State, 90 Ala. 602, 8 So. 858 [24 Am.St.Rep. 844], opinion by Chief Justice Stone."

The two charges are identical, as insisted, but appellant overlooked the fact that the Martin case, supra, on this particular point was overruled and held to be erroneous by the Supreme Court in the case of Williams v. State, 140 Ala. 10, 15, 37 So. 228; see, also, Diamond v. State, 22 Ala. App. 410, 116 So. 312.

On the trial of this case the defendant introduced a large number of witnesses, all of whom testified that he is a man of good character. This evidence was without dispute.

■■ At the close of defendant's case, the State was allowed to offer evidence of the general reputation of deceased. This was done over the objection and exception of the defendant, and in this the trial court committed error to a reversal. It has been repeatedly held by the appellate courts of this State that evidence of the general character of the deceased, in a homicide case, is not admissible. Especially is this true where the defendant pleads, and invokes, the doctrine of self-defense. Sanford v. State, 2 Ala.App. 81, 57 So. 134; Montgomery v. State, 2 Ala.App. 25, 31, 56 So. 92; Styles v. State, 5 Ala.App. 36, 59 So. 698; Webster v. State, 207 Ala. 668, 93 So. 545. In Webster's case, the Supreme Court (speaking through present Chief Justice Gardner) said: "It is a well-recognized general rule that in homicide cases ordinarily the character or reputation of the deceased is not involved as an issue, and that proof relative thereto is generally inadmissible." See, also, McKenney v. State, 17 Ala.App. 117, 82 So. 565.

The ruling of the court under discussion appears of record and is as follows: "Wallace Hetherington, a witness for the State, testified that he was a farmer; lived at Fountain for 62 years; knew Robert Henderson, (deceased), in his lifetime; lived near him, about one-half mile from him; that he saw him frequently. * * * Q. (by Solicitor) Do you know his general reputation in that community? Defendant: Now, we object to evidence as to his (deceased) general reputation. Solicitor: I think that is the way to get at it. The court overruled the objection to the question, and defendant duly excepted. Witness answered: Yes Sir. Was that good or bad. Ans. Good."

■ In brief of Attorney General it is conceded, and properly so, that there was error in the foregoing ruling of the court, but the Attorney General undertakes to sustain the court's action for the reason that afterwards, pending the trial, other witnesses were permitted to testify likewise and that the defendant failed to interpose objections in each instance. This position is untenable. By the ruling announced by the court, supra, the trial court made known its position in unequivocal terms, the defendant had his duly reserved exception to the ruling of the court on the question involved, hence was under no duty to repeat again and again the same objection to the same question. This would have been useless and unnecessary, and the law does not contemplate, or require, the doing of a useless thing.

The point under discussion has been considered and determined by this court, and the Supreme Court (on certiorari), in our recent case of Connelly v. State, 1 So.2d

606, 608 (on rehearing) ; [1] Id., 241 Ala. 132, 1 So.2d 608. In view of the foregoing, further discussion is unnecessary. The authorities cited by the Attorney General in this connection are not in point. The testimony allowed over the objection and exception was illegal, and the exception to the ruling of the court was well taken, and was as efficacious as would have been numerous other exceptions on the identical ruling.

▮ Attorney General further undertakes to invoke the doctrine of error without injury. There is no phase of this case, from its attendant facts, which would justify or call for this ruling. The evidence, here adduced, in many respects presented very close questions for the determination of the jury. There appears no analogy in the facts of this case, to the recited facts in the opinion of Turner v. State, 29 Ala. App. 13, 191 So. 392, certiorari denied 238 Ala. 352, 191 So. 396, upon which authority the Attorney General rests, the insistence under discussion. By reference to the Turner case, supra, it is easily ascertainable that the recited facts in the opinion, were appalling in atrocity, and that no extenuating or mitigating facts appeared in the commission of the murderous assault there complained of and for which the defendant was convicted. Here, it clearly appears that the testimony was silent as to any motive the defendant may have had in taking the life of the deceased. Moreover, the question as to who started the difficulty and who was the aggressor in the unfortunate affair, as well as the intent of the accused, presented very grave and close questions for the jury to determine. To hold, as requested, that any error of the court in this case was harmless, and that defendant suffered no injury therefrom, would, in our opinion, be a very hazardous adjudication, one which we firmly decline to declare or announce.

For the error designated, the judgment of conviction from which this appeal was taken is reversed and the cause remanded.

Reversed and remanded.

### On Rehearing.

It is evident, from the application for rehearing filed in this case, that the writer thereof misconstrued the opinion of this court. There is not any statement or utterance in said opinion to the effect, as insisted, that upon the trial of a homicide case, where the general character of the deceased for peace and quiet has been made an issue, that evidence thereof was inadmissible and that it was error for the trial judge to allow in evidence testimony to that end.

What we did hold, and here reiterate, is that the general reputation of the deceased is not a proper inquiry upon the trial of a homicide case. The authorities cited in the opinion sustain the proposition clearly. See also Sanford v. State, 2 Ala.App. 81, 88, 57 So. 134, 137, wherein the court said: "The general reputation of deceased was not admissible." (Citing cases.)

The authorities cited in the brief in support of the application for rehearing have reference to the character of the deceased for peace and quietude. None of them in any manner hold the mere general character of the deceased is a proper issue.

Application for rehearing overruled.