Second degree murder; sentence: one hundred twenty-five years and one day imprisonment.
The body of Mrs. Rudene Edwards was found in her Phenix City home on October 20, 1976, at approximately 7:00 A.M. The cause of death was determined to be from multiple blows to the head with a blunt instrument. The bloody stock of a .22 caliber rifle was found at the scene. The home had been ransacked.
Robbery was the crime originally contemplated by the intruders. Sixty-six thousand four hundred fifty dollars ($66,450.00) had been seized by the FBI from the Edwards' safe-deposit box in the course of a gambling investigation. Mrs. Edwards had recently recovered the money through a much-publicized civil action in federal court. Apparently ignorant of the fact that most people use banks, the robbers assumed that Mrs. Edwards would have the money in her home. Their assumption was incorrect.
No physical evidence was uncovered which would connect the appellant with the crime. There was no eyewitness testimony, and the testimony of the majority of the State's witnesses failed to connect the appellant with the murder in any way. We will summarize the testimony of only those witnesses which tend to implicate the appellant in the crime.
Lamar Jackson testified that he was at the home of Sarah "Cricket" Rezk in Columbus, Georgia, on October 3, 1976. While there, he overheard a conversation between Linn Conley, Bobby Joe Lee and the appellant. Conley stated that he knew of a $50,000 "score" in Phenix City. The "score" (target of the robbery) was identified as the mother of Bobby Smith, who was Mrs. Edwards. The appellant stated that he would have to check with Andy Austin and would get back with Linn Conley later. Jackson heard essentially the same conversation *Page 1158 
take place again at the Rezk house on October 17, two days before the murder.
Jackson stated that around 1:30 P.M. on October 19, the appellant borrowed the automobile and .38 caliber pistol of Sarah Rezk and departed with Andy Austin. Around 8:30 P.M. Jackson drove Deborah Vella to the "Southeastern," a billiard parlor for the purpose of retrieving Cricket Rezk's pistol. Appellant would not give the pistol to Deborah Vella at that time. The next day, the appellant returned the automobile and the pistol. The pistol was covered with an unidentified substance which appeared similar to jelly. Jackson cleaned the pistol for Cricket.
About three or four days after the murder, Jackson was at the Rezk residence again in the presence of Cricket, Deborah Vella, Andy Austin and the appellant. He overheard a conversation wherein the appellant stated to Austin:
 ". . . `You didn't have to do it — you didn't have to do it the way you did.'"
Austin replied:
 ". . . `If the money would have been there like we was told we — things wouldn't have happened the way they did.'"
Appellant said:
 ". . . `You didn't have to hit her as many times as you did.'"
Austin replied:
 ". . . `Well, she wouldn't tell me where the f_____ money was, and I needed it. That's what we were there for.'"
Appellant again stated:
 ". . . `Well, you didn't have to — you didn't have to kill the woman.'"
Austin responded:
 ". . . `Well, I just wanted to find out where the money was at. If she had told me I wouldn't have done it.' . ."
Jackson admitted having previously been convicted of two felonies of "receiving stolen goods" and "auto theft." At the time of his testimony, he was unemployed. The prior year he worked as a part-time bartender. He was on occasion an informer for the Columbus Police Department, and he expected to get a substantial reward which had been posted in the instant case. He admitted to having used narcotics and marijuana.
Deborah Vella testified that the appellant borrowed Sarah Rezk's pistol and car on October 19 and left with Andy Austin. She made three or four trips to the Southeastern for Mrs. Rezk asking that the appellant return the gun. Appellant refused stating that "he was going to probably have to use it later on, he had something another going down." He returned the gun and the car to Mrs. Rezk the next day.
Deborah Vella was present at the Rezk residence on October 17 and overheard the conversation concerning the $50,000 "score over there at Bobby Smith's mama's house." She heard the appellant say that he would not go unless Andy Austin wanted to go.
The witness testified that during either the first or second week in November following the murder, she, the appellant and Andy Austin were riding in Cricket Rezk's automobile and "went to K-Mart to take back some stuff." In route there, the appellant told her that in reference to the crime, "the $50,000.00 wasn't there anyway. He said, `If it was I couldn't find it.'"
On cross-examination, the witness admitted to engaging in "a little bit" of prostitution and that she made her living by "boosting" and "kickbacking" which from the record appears to be the act of shoplifting merchandise and later returning it to the store for a refund as though it had been purchased.
Sarah "Cricket" Rezk, an admitted prostitute, testified to substantially the same facts as Lamar Jackson and Deborah Vella had concerning the appellant borrowing the gun and car and refusing to return the gun until the next day after the crime. She testified that four days after the murder, she overheard Austin tell Jackson and the appellant that he (Austin) "didn't leave no man, woman, or child behind him as a witness." Appellant told Austin that the "last *Page 1159 
score" should not have happened the way it did, that it was not worth what they came out with.
Thus, the only circumstantial evidence connecting the appellant with the crime comes from a group of thieves, shoplifters and prostitutes. This point is stressed by counsel for appellant. However, evidence of criminal conspiracies hardly ever comes from ministers and civic leaders. The appellant can hardly complain of the unsavory character of the witnesses against him as they were all his chosen companions. The weight and credibility of the testimony was for the jury to determine.
 I
A conviction may be had on circumstantial evidence solely so long as that evidence is so strong and cogent as to show the defendant's guilt to a moral certainty. Tanner v. State,291 Ala. 70, 277 So.2d 885 (1973). Circumstantial evidence is entitled to the same weight as direct evidence, provided it points to the guilt of the accused. Locke v. State, Ala.Cr.App., 338 So.2d 488 (1976). We are convinced that the evidence, though circumstantial, was sufficiently strong and cogent as to show the defendant's guilt to a moral certainty. The testimony of Lamar Jackson, Sarah Rezk and Deborah Vella, if believed by the jury, was sufficient to support the verdict.
 II
Throughout the trial, evidence in one form or another was put before the jury showing the bad character of the appellant and his commission of other crimes not charged in the indictment. In most instances, the trial judge either sustained the appellant's objection; the objection came after the answer was given and no motion to exclude the answer was made; or the objection was not specific. However, one instance does stand out and warrants review.
Deborah Vella testified that during either the first or second week of November following the murder, she and the appellant and Andy Austin were riding in an automobile headed toward K-Mart. When K-Mart was mentioned, the defense attorney objected to any further testimony, and the trial court sustained the objection. In answer to further questions, the witness stated that while they were riding on Forest Road and on Macon Road, the appellant told her that he was unable to find the $50,000 (apparently at the Edwards' home).
On direct examination of the appellant, his attorney asked him about the alleged conversation in the automobile in November. The appellant admitted going to K-Mart, but denied having the conversation in route with Deborah Vella concerning the $50,000. He contended that the trip to K-Mart was actually a week before the date of the murder and that he did not recall any other conversations with her in an automobile in route to K-Mart.
During cross-examination of the appellant by the district attorney, the following occurred:
 "Q. Isn't it a fact that you taught the witness Deborah Vella how to shoplift, Mr. Anderson.
"A. No, sir.
 "Q. Mr. Anderson, I'm going to ask you if you were apprehended in K-Marts and Miss Deborah Vella came back there and asked you what was she supposed to do?
 "MR. FAULK: Your Honor, we object to that, evidence of another crime.
"MR. BENTON: This was not by the police.
"MR. FAULK: It cannot be connected in any way —
 "THE COURT: Just a moment — just a moment. Sustained in that form.
 "Q. Let me ask you were you retained by store personnel in K-Marts for shoplifting and Miss Deborah Vella came back and asked you what she was supposed to do?
"MR. FAULK: We object, if the Court please.
"THE COURT: Overruled. You may answer. *Page 1160 
"A. Do what, now?
 "Q. I will ask you if you weren't retained by personnel of K-Mart for shoplifting and Miss Deborah Vella, who was with you on that run, came back in the room where you were being retained and asked you what she was supposed to do, and you told her who to contact?
"A. No, sir, she didn't."
The district attorney recalled Deborah Vella to the witness stand and called her attention to her prior testimony concerning the trip to K-Mart (on November 8). The following occurred:
 "Q. Let me ask you this: Did Ronnie Anderson go with you that day?
"A. Yes, he did. He drove Cricket's car.
 "Q. I will ask you if on that trip Ronnie Anderson was apprehended by the folks in K-Mart?"
"MR. FAULK: We object.
"A. Yes, sir, he was.
 "MR. FAULK: We object and ask that the witness be instructed not to answer the question while there is an objection before the Court.
"THE COURT: Overruled.
"A. Yes, sir. He was apprehended for shoplifting.
 "THE COURT: Wait just a minute. I overruled the objection. She has answered your question."
When the appellant was cross-examined by the district attorney as to whether or not he had been arrested at K-Mart in November, a specific objection was made: "Your Honor, we object to that, evidence of another crime." The trial court sustained the objection as to the form of the question but allowed it to be asked in substantially the same form as before. However, the appellant denied his apprehension or arrest on the unrelated charge, thus no prejudice resulted. Houston v. State,50 Ala. App. 536, 280 So.2d 797 (1973).
Deborah Vella was recalled to impeach the appellant's denial of his arrest at K-Mart. At that time, the appellant made a general objection. The objection was timely, but the answer came before the trial court ruled. Again, a general objection was made, and the trial court overruled the objection and allowed the answer a second time. Although only a general objection was made, a specific objection was made when the district attorney attempted to elicit the same evidence during cross-examination of the appellant. It is not necessary to repeat the specific grounds for an objection each time a question is asked, if a proper objection had been previously made to the same evidence and the trial court had been made fully aware of the ground of that objection. Wilson v. State,37 Ala. App. 644, 73 So.2d 925 (1954); Nobles v. State,30 Ala. App. 434, 7 So.2d 770, cert. denied 242 Ala. 643,7 So.2d 773 (1942); National Casualty Company v. Dunn, 209 Ala. 484,96 So. 576 (1923).
A general objection is likewise sufficient to present for review the illegality of the evidence admitted, if that evidence was illegal for any purpose and could not have been made legal by introducing other evidence or reframing the question. Loyd v. State, 279 Ala. 447, 186 So.2d 731 (1966). InMeador v. State, 37 Ala. App. 573, 72 So.2d 418 (1954) the appellant was being tried for burglary, and the prosecution attempted to elicit testimony from a witness showing a prior unrelated larceny by the appellant. The Court of Appeals held that such evidence was:
 ". . . manifestly illegal and obnoxious to all rules of evidence. It could not be rendered legal by reframing the question, or by the introduction of other evidence. Under such circumstances the general objection interposed is sufficient. . . ."
In a prosecution for violation of the prohibition law, a question seeking to elicit evidence of a prior arrest of the appellant was properly raised by a general objection. Rogers v.State, 34 Ala. App. 617, 42 So.2d 642 (1949) cert. denied,252 Ala. 670, 42 So.2d 643.
In Helms v. State, 34 Ala. App. 82, 37 So.2d 229, cert. denied251 Ala. 275, 37 So.2d 231 (1948) the appellant was being *Page 1161 
tried for the crime of assault with intent to murder. The Court of Appeals held that a general objection was sufficient where the prosecution sought to elicit testimony of a prior assault by the appellant upon a stranger to the case being tried and which was in no wise a part of the res gestae of the case being tried. The Court of Appeals found that there was no way such a question could be reframed to call for legal testimony.
In the instant case, the question to witness Deborah Vella concerning the arrest of the appellant for shoplifting some weeks following the murder charged in the instant indictment violates the rule that a witness or a defendant may not be asked about unrelated criminal acts of the defendant not charged in the instant indictment. Headley v. State,51 Ala. App. 148, 283 So.2d 458 (1973).
What transpired at K-Mart on the occasion in question had absolutely nothing to do with the issues at trial. The prosecution's questions concerning the arrest of the appellant on that question, "sheds no light on the identity or the intent of the appellant in this case. It's prejudicial tendencies cannot be rationally questioned." Helms, supra.
Whether the appellant was arrested for shoplifting at K-Mart some weeks after the murder in question, is completely irrelevant to the issues in the murder trial. Its obvious purpose was to prejudice the appellant in the eyes of the jury. While the appellant could have been impeached on the substance of the purported inculpatory statement made in route to K-Mart, what transpired after he reached the store had no bearing on any issue in this case. The evidence elicited from Deborah Vella when she was recalled as a witness, not only violates the rules discussed above, but it also amounts to an attempt to impeach the defendant as a witness on an immaterial matter. See: Gamble, McElroy's Alabama Evidence, § 156.01.
There is an additional reason why the appellant's conduct at K-Mart may not be shown. A defendant's credibility, as a witness, may be attacked by showing his former conviction of a crime involving moral turpitude, if proved properly. "But whether accused has been guilty of wrongful conduct or the commission of an offense for which there has been no conviction is not a proper inquiry. Davis v. State, 21 Ala. App. 637,111 So. 314." White v. State, 40 Ala. App. 613, 119 So.2d 344
(1960).
In Davis, supra, the Court of Appeals stated:
 ". . . The mere fact that an accused had been arrested on several former occasions upon a similar charge is not a proper inquiry. . . . A former conviction may be shown under relevant conditions, but the mere arrest of a man, without more, sheds no light upon his guilt or innocence on the trial of a case, nor should it be allowed or considered in order to militate against the weight of his evidence or credibility as a witness. That such inquiry before the jury was hurtful cannot be doubted, and, being erroneous, the judgment of conviction cannot stand." Citation omitted.
For the reasons stated above, the judgment of conviction must be reversed and the cause remanded for a new trial.
REVERSED AND REMANDED.
All the Judges concur.