284 So.2d 741

Herbert C. LOVELL

v.

STATE.

7 Div. 106.

Court of Criminal Appeals of Alabama.

Oct. 30, 1973.

Benjamin E. Pool, Montgomery, for appellant.

William J. Baxley, Atty. Gen., Montgomery, and J. Mason Davis, Sp. Asst. Atty. Gen., Birmingham, for the State.

SIMMONS, Supernumerary Circuit Judge.

Appellant-defendant was indicted for murder in the first degree, tried therefor and convicted of murder in the second degree with sentence fixed by the jury at fifteen years imprisonment. This is an indigent appeal from the judgment of the court pursuant to the verdict of the jury.

The victim of the homicide was Howard Thompson who, on July 12, 1969, the date of the homicide, operated a fringe restaurant at or near Pell City, Alabama. The homicide occurred at the site of the restaurant under such circumstances, we think, as to justify the jury's verdict.

A delineation of all the events in evidence leading up to and occurring when the homicide was committed would unnecessarily burden and lengthen this opinion. The evidence covers 278 pages of transcript paper.

It appears that the defendant and his wife, the latter having formerly been married to the deceased, lived in Birmingham wherefrom, on Saturday, July 12, 1969, they traveled in their station wagon to deceased's restaurant arriving around the noon hour. On arrival Mrs. Lovell greeted her son on the outside of the restaurant. This son was born to the union of Mrs. Lovell and the deceased. Defendant and his wife then went inside the restaurant.

After finishing their meal, both went to another area of the building where they paid their bill, thereupon engaging the de-

ceased in a conversation about the son who was in the yard.

This engagement culminated in some verbal unpleasantries which eventuated in the deceased wielding a cue or pool stick that accidentally or purposely came in contact with the head of Mrs. Lovell.

This contact motivated the defendant, accompanied by his wife, to seek a warrant of arrest for the deceased. The efforts of the defendant were unsuccessful because he could not find a magistrate. There was some conversation between the defendant and official personnel at the police station where defendant was seeking the services of a magistrate.

Leaving the police station defendant and his wife, with the exception of one stop at the house of another magistrate who was not at home, went directly to the residence of the defendant's mother, who lived next door to Mrs. Lovell's sister. Soon after arrival the defendant proceeded alone to the house of a friend, Raymond Hannah, from whom, by false representation, he borrowed or obtained a .12 gauge shotgun from the magazine of which, at the home of his mother, he removed a plug and thereupon loaded it to capacity with more shells. Mrs. Lovell, defendant's wife, was then visiting next door in the home of her sister.

Defendant then drove to the restaurant of the deceased with a fully loaded shotgun in his possession. On arrival it appears from the evidence that an employee informed the deceased that the defendant was outside.

The deceased, with a pistol in each of his two front pockets and a .28 gauge shotgun in his hand, went on the outside of the restaurant where a confrontation with the defendant took place. The defendant contended that he went back to the restaurant to talk with the deceased and took the .12 gauge shotgun along for protection.

There was a dispute as to which one fired the opening blast. The defendant asserted at the trial that he was on one side of the driver's seat with the car door open when the deceased appeared. He then shifted to the other side of the seat, got out on the ground where he was standing when the deceased fired through the back window of the station wagon which he had driven to the scene. Some of the shot from the blast through the window hit him in the face. The defendant fired at the deceased who was killed thereby. There was a conflict of evidence as to who fired first. Three recently spent .12 gauge shotgun shells were found at the scene. The pistols were not fired. Only one spent .28 gauge shotgun shell was found.

Mavis Brown, a waitress, testified that during the noon hour when the defendant, his wife, and the deceased were in the kitchen area where there was some fussing and arguing among them, the deceased asked the defendant and his wife more than one time to leave the place but they did not leave. Upon such failure to leave, a scuffle ensued between the deceased and the defendant. It was then that the deceased reached and got a pool stick, started back and got tangled in some wire and in getting it "loose he hit Mrs. Lovell". Then the defendant and his wife left.

There was also some evidence that the defendant, while at the police station, remarked at the failure to get the warrant, "If I cannot get a warrant for him, I will go back and get my gun and kill the son-of-a-bitch." Another witness for the state, Jimmy Bearden, a policeman, testified that the defendant said at the police station "looks like I will have to take care of that in my own way." He said he did not hear the defendant say anything about killing the deceased. Mavis Brown, supra, testified that when she went out and knelt down to see about "Howard" after the shooting, she heard the defendant say "I told him I would kill him."

Under all the evidence, some in conflict, the burden was on the jury to resolve the conflicts and to determine the guilt or in-

nocence of the defendant. A wide range of testimony, with and without objection, was introduced by the state and the defendant. It appears that the jury got a wide perspective as to all events occurring from the time the Lovells arrived at the noon hour until the killing which occurred soon after 5:00 o'clock in the afternoon.

## I.

Appellant contends that the trial court committed error to reverse in sustaining the state's objection to evidence whereby the defendant offered to prove by Raymond Hannah, who loaned the shotgun to the defendant, that Mrs. Lovell, mother of the defendant, said to him on the night of July 12, 1969, the date of the homicide, that the defendant had been asleep that afternoon.

■ If there was any prejudicial error in refusing to admit her testimony as a part of the res gestae, as the defendant asserts, it was cured by the defendant's own testimony which was not disputed. He testified that while his wife was next door at the home of her sister, he lay down on the couch, but did not know how long he remained there. However, we do not think that the evidence of the mother was admissible because it was hearsay and not a part of the res gestae.

We will not charge the trial court with error in sustaining the state's objection as to what the defendant's mother said to Mr. Hannah.

## II.

■ The State Toxicologist, Dr. Robert B. Johnson, whose qualifications the defendant admitted, testified over the objection of the defendant that according to his best judgment the distance between the muzzle of the defendant's gun and the person of the deceased when the shots were fired was probably ten, fifteen, or twenty feet.

Appellant here contends that an expert or non-expert cannot "draw conclusions for the jury from the examination of the body of the deceased and wounds thereon, as to relative positions of the parties when the fatal shot was fired." Padgett v. State, 49 Ala.App. 130, 269 So.2d 147, cert. den., 289 Ala. 749, 269 So.2d 154.

We held in Richardson v. State, 37 Ala. App. 194, 65 So.2d 715(3) as follows:

"The authorities are committed to the rule that an expert witness cannot give evidence of his opinion of the relative positions of the combatants when a shot was fired. The question of instant concern is not governed by this doctrine. The injuries disclosed certain bone breaks and tissue pressures."

There was no serious issue here involved except self-defense. The defendant, testifying as a witness for himself, admitted that he shot the deceased. It is not disputed that the deceased fired the .28 gauge shotgun in his possession through the back window glass of the defendant's station wagon. The defendant contended that the deceased fired first and the pellets from the shell hit him in the face. The defendant then contends that he then fired at the deceased.

The relative distance between the parties when the shots were fired, although evidence as to the distance was a part of the res gestae, fails to shed any light on the issue of self-defense. There is no question that the defendant was shot in the face and Mr. Thompson was killed from the blast of the defendant's gun. The distance between the parties when the shots were fired, the defendant being superficially wounded and the deceased killed, fails to shed any light on which party fired first. It is very clear from other evidence that the parties were only a short distance apart and each fired his respective gun.

The admission of the Toxicologist's testimony as to the distance between them was not error to reverse.

### III.

■ Appellant next asserts that the trial court erred in refusing to allow Joann Bush, a fourteen year old witness, to testify whether or not she knew if the deceased was prone to using profanity.

It appears from the transcript here on file at page 219 that the state without objection on part of the defendant offered in evidence a transcript of testimony of Joann Bush taken on a habeas corpus trial. This hearing occurred prior to the trial in chief. This evidence was marked Exhibit 16 in the transcript before us.

It appears in said exhibit that the defendant asked the witness, as shown on page 229: "Mr. Thompson was prone to using profanity, is that right?" Objection by the state was sustained.

The ruling of the court as shown by Exhibit 16, supra, introduced at the trial in chief without objection, is not available here to the defendant as error.

### IV.

■ Appellant complains that the trial court erred in refusing to permit Mrs. Rubie Nell Lovell, wife of the defendant, to testify as to what Mavis Brown, a waitress in the restaurant, told her the deceased said when she asked him (the deceased), at the request of Mrs. Lovell, if she could see "Big Boy" her son.

It is to be noted that the defendant introduced into evidence as Exhibit 7 the written statement of Mavis Brown given to a State Investigator. This statement sets forth the reply of the deceased to Mrs. Lovell's appeal to see "Big Boy." We quote from this statement in evidence:

"* * * I asked Howard if she could see 'Big Boy' in the dining room, Howard asked me to tell her that 'Big Boy' was not allowed in the dining room. * * *"

We thus observe that the reply of the deceased went before the jury at the instance of the defendant. There was no error in refusing the admission of this answer when it was already in evidence.

### V.

■ Appellant contends under this proposition that the trial court erred in excluding the defendant's question to his wife, a witness for the defendant, as to what was said "to bring on the fuss" that occurred at noon outside of the dining room.

This question called for a conclusion of the witness as to what words brought on the alleged fuss and was therefore objectionable.

■ We do not think the conversation by the parties at that time was admissible. The conversation took place several hours before the killing. We held in Sanford v. State, 2 Ala.App. 81, 57 So. 134 that evidence of particulars of a former trouble or difficulty that caused certain threats to be made by the deceased against the defendant was inadmissible in a prosecution for murder.

The Supreme Court held in Byrd v. State, 257 Ala. 100, 57 So.2d 388 that even if evidence on the issue of self-defense is sufficient to warrant proving prior difficulties between the defendant and the deceased, details of the former difficulties cannot be shown. We think the transcript of the evidence shows that the jury, despite the ruling of the court denying admission of the conversation, supra, got a clear and full picture of what occurred between the parties at the noon hour.

The court is free of error in its refusal to admit the conversations, supra.

### VI.

Finally, in this argued proposition the defendant contends that the court erred in sustaining the state's objection to his ques-

tion if he, the defendant, knew for a fact that the deceased had pointed the gun at anybody else before. The defendant had already testified that he knew the deceased always carried a gun.

The question was general and broad because it did not limit the time of such presentation, and it might have been done, if in fact it was done, in fun or jest. The question called for evidence which would not shed any light on the guilt or innocence of the defendant.

We have read and examined the entire record and find the rulings of the trial court to be free of error. The judgment is hereby affirmed.

The foregoing opinion was prepared by Hon. Bowen W. Simmons, Supernumerary Circuit Judge, serving as a judge of this Court under § 2 of Act No. 288, July 7, 1945, as amended; his opinion is hereby adopted as that of the Court.

Affirmed.

All the Judges concur.