[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1166 
The defendant, indicted for the second degree murder of Howard Curtis Francis by running over him with an automobile, was convicted of manslaughter in the first degree and sentenced to ten years' imprisonment. The defendant raises two main issues on appeal: (1) That his admissions of guilt to a prisoner in the county jail were involuntary and hence inadmissible because he had previously invoked his right to counsel, because the inmate was an agent for the State and because the inmate offered "hope" to the defendant; and (2) that the evidence against the defendant was insufficient to connect him with the homicide. *Page 1167 
 I
Initially, the defendant asserts the involuntariness of certain incriminating statements he allegedly made to a prisoner in the Marshall County jail.
The defendant was arrested on the evening of February 20, 1978. He was advised of his constitutional rights under Mirandav. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and signed a written waiver of those rights. The defendant was then questioned by the District Attorney and Deputy Sheriff Mark Bollinger. After answering some questions the defendant told these two officers that he felt they were trying to tie him into something that he did not do so he would like to have an attorney present. The defendant was not questioned further. The propriety of any statement elicited during this interview is not challenged. From the record it is undisputed that the interview was conducted in a proper and voluntary manner. During this interview Deputy Lucian Howard was not present. Deputy Howard testified, and there is no evidence to the contrary, that he had no information or knowledge that the defendant had requested the presence of an attorney.
On the evening of February 21, 1978, the day following the initial interview, Deputy Howard talked with the defendant in the investigator's office on the first floor of the courthouse. Before talking with the defendant he warned him of his Miranda
rights. There is no evidence that the defendant expressed any desire to exercise any of his constitutional rights or that he gave Deputy Howard any indication that he did not want to talk without the presence of his attorney. Deputy Howard testified that he did not threaten, coerce, offer hope of reward or "anything like that" in order to elicit a statement from the defendant. Despite this predicate of voluntariness, the trial court only allowed the State to show that Deputy Howard and the defendant had a conversation. The trial court permitted Deputy Howard to testify as to what he said to the defendant but prevented Howard from testifying about what the defendant said to him.
During the conversation, Deputy Howard asked the defendant if he would like to talk with anyone on the first floor about him. The defendant then left the investigator's office and walked out into the cell block on the first floor where the minimum security prisoners, or trusties, were housed. The defendant went into the cell block by himself and remained about ten or fifteen minutes.
There were twenty-five or thirty prisoners in the minimum security cell block. One of them was a trusty prisoner named James Howard Duncan, who had been in the Marshall County jail for four years serving a sentence for a robbery conviction. Duncan testified that Deputies Howard and Bollinger entered with the defendant and "called out to me and the minimum security cell block and told us to tell Mr. Johnson what we thought of him (Howard), what kind of character he was." The defendant walked back to Howard's room and said "he was thinking about making a statement to Mr. Lucian Howard and wanted to know what kind of character he was", "what kind of person he was". Duncan told the defendant that Deputy Howard was honest. The defendant then talked to some other prisoners in the cell block for a few minutes.
After this the defendant returned to Duncan's room and had another conversation with Duncan. Duncan told the defendant that he had also "done time" for vehicular manslaughter. Duncan then asked the defendant if he was drunk when he ran over the man.
 "And he (defendant) was sitting there and he lit up a cigarette and tears come in his eyes there and he said cigarette smoke in my eyes, you know, looked like he was about to cry but, of course, he said cigarette smoke, so . . . he said him and his wife had been having problems and he was all messed up and everything and . . ."
* * * * * *
 "And he said it was a accident, said it was a accident and it was all over before *Page 1168 
he knew what happened, and everything had went blank to him and when he said that at the same time Mr. Lucian Howard and Mark Bollinger came back into the first floor, so he got up and walked back out, and so they go back outside and I get up and walk up the hall and the Chief Investigator A.G. Lang was standing out in the other hall when he saw me . . and I thought he's already doing it, and so Mr. Lang called me out and I walked down there and he said, what did the man say, and I said, well, the man said it was a accident . . ."
Duncan testified that he did not threaten or coerce the defendant but "tried to offer him hope". Trusty Duncan also stated that he had no conversation with any investigator from the Sheriff's office before the defendant entered the cell block; that there was no "pre-arrangement" between (him) and any investigator from the Sheriff's office or anybody else to talk to this man and try to get a statement from him or anything"; that in the three years that he had been a trusty, he had never been asked to talk to another prisoner and tell any officer what the prisoner said; and that no other prisoner had ever confessed to him.
The defendant argues that the incriminating statements he made to Trusty Duncan are inadmissible (1) because the defendant had previously requested to have an attorney present during questioning; (2) because he declined to be interrogated by Deputy Howard without counsel present; (3) because Trusty Duncan was an agent of the Sheriff's investigators; and (4) because Trusty Duncan offered the defendant "hope."
From the record the arguments of the defendant are grounded on speculation rather than fact. At trial the defendant presented absolutely no evidence whatsoever to contradict the voluntariness of his statements to Trusty Duncan before they were admitted into evidence. In his defense the defendant, as to this matter, testified that:
 "They was trying to get me to make a confession, and he told me that he (Deputy Howard) could help me and that he could prove that he could help me and he wanted me to talk to Duncan for character."
The defendant denied telling Duncan that it was an accident and testified that he only told Duncan that he "didn't have anything to do with it" and that he "wasn't worried about the charges because (he) was innocent".
Although a defendant has declined to answer questions without an attorney present, the Miranda decision does not, in the absence of a request for counsel, mandate the presence of counsel before questioning may be resumed. Miller v. State,337 So.2d 1360, 1362 (Ala.Cr.App. 1976). "(A)n explicit statement of waiver is not invariably necessary to support a finding that the defendant waived the right to remain silent or the right to counsel guaranteed by the Miranda case." North Carolina v.Butler, 441 U.S. 369, 99 S.Ct. 1755, 60 L.Ed.2d 286 (1979). A defendant's knowledge of or his assertion of his right to counsel may, under the totality of the circumstances, strongly evidence the fact that he knowingly waived counsel at a subsequent time. Thompson v. State, 347 So.2d 1371
(Ala.Cr.App.), cert. denied, Ex parte Thompson, 347 So.2d 1377
(Ala. 1977), cert. denied, 434 U.S. 1018, 98 S.Ct. 740,54 L.Ed.2d 756 (1978).
There is absolutely no evidence that the defendant refused or declined to be interrogated by Deputy Howard without counsel present. Even the defendant himself did not assert this on the witness stand.
Moreover there is absolutely no evidence that Trusty Duncan was acting as an agent for or on behalf of the Sheriff's office or any law enforcement officer when he talked with the defendant. There is no evidence to support a finding that the defendant was "tricked" into giving a statement. Kircheis v.State, 56 Ala. App. 526, 535, 323 So.2d 412, cert. denied,295 Ala. 409, 323 So.2d 421 (1975).
Trusty Duncan's "offer of hope" to the defendant is not the type of offer of hope *Page 1169 
that vitiates a confession. From the context in which this "offer" was extended it is obvious that it was not any form of inducement to extract a confession or a statement from the defendant. The "offer of hope" was not made by Duncan to produce in the mind of the defendant some hope of favor or benefit to be secured by his confession. We interpret this "offer of hope", as apparently did the trial court, as being an offer of sympathy, understanding and reassurance extended by Trusty Duncan, as one who had been in that same position before, to the defendant. This "offer of hope" was not calculated to engender or encourage any idea in the mind of the defendant that his case would be lightened, meliorated, or more favorably dealt with if he confessed. Womack v. State, 281 Ala. 499, 205 So.2d 579 (1967).
A person inducing an accused to make a confession need not always be a law enforcement officer in order to render the confession inadmissible. Allen v. State, 53 Ala. App. 66,297 So.2d 391, cert. denied, 292 Ala. 707, 297 So.2d 399 (1974). However, before a promise of benefit from a non-law enforcement officer will render a confession or incriminating statement involuntary, the circumstances must be such that the defendant fairly supposed that the promisor had the power to secure the promised benefit for the accused. Carter v. State,356 So.2d 682, 686 (Ala.Cr.App.), cert. denied, 356 So.2d 689 (Ala. 1978); Tanner v. State, 57 Ala. App. 254, 263-264, 327 So.2d 749
(1976); Allen, supra. Here the defendant could not fairly suppose that Duncan had the power to secure any benefit for him.
The determination by the trial judge that the incriminating statements made by the defendant were voluntary is supported by the great weight of the evidence. His decision is not due to be disturbed. Burks v. State, 353 So.2d 539, 542 (Ala.Cr.App. 1977).
 II
The defendant also contends that the State failed to make out a prima facie case and, consequently, his motion to exclude the evidence and motion for a new trial should have been granted.
In reviewing the sufficiency of the evidence the appellate courts of this State are bound by several well settled rules. It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt and to a moral certainty. Instead, the function of this Court is to determine whether there is legal evidence from which a jury could by fair inference find the defendant guilty. Cumbo v. State,368 So.2d 871 (Ala.Cr.App.), cert. denied, 368 So.2d 877 (Ala. 1979);Scruggs v. State, 359 So.2d 836, 842 (Ala.Cr.App.), cert. denied, 359 So.2d 843 (Ala. 1978).
In determining the sufficiency of the evidence to sustain the conviction, this Court must accept as true the evidence introduced by the State and accord the State all legitimate inferences therefrom. Ellis v. State, 338 So.2d 428
(Ala.Cr.App. 1976); Edson v. State, 53 Ala. App. 460,301 So.2d 226 (1974). The evidence must be considered in the light most favorable to the prosecution. Colston v. State, 57 Ala. App. 4,325 So.2d 520, cert. denied, 295 Ala. 398, 325 So.2d 531
(1975).
Where there is legal evidence from which the jury can by fair inference find the defendant guilty, this Court has no right to disturb the verdict. Bell v. State, 339 So.2d 96 (Ala.Cr.App. 1976). A verdict of conviction will not be set aside on the ground of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this Court that it was wrong and unjust. Bridges v.State, 284 Ala. 412, 225 So.2d 821 (1969); Morton v. State,338 So.2d 423 (Ala.Cr.App. 1976). There is a presumption in favor of the correctness of a jury's verdict, and when the trial judge declines to grant a new trial that verdict is strengthened on appeal. Tolliver v. State, 50 Ala. App. 654,658, 282 So.2d 92 (1973).
The evidence presented by the State supports a finding that the victim was run over and killed by a 1965 or 1966 Ford pickup *Page 1170 
truck traveling west on the Eddy-Scant City Road a few minutes past 7:00 o'clock on the night of February 13, 1978. The defendant was placed in the area, if not on the same road, shortly after 7:00 driving a light colored 1966 Ford pickup truck.
In a prosecution for murder, the corpus delicti consists of two elements: (1) Death of the victim named in the indictment and (2) that death was caused by the criminal agency of another. McDonald v. State, 56 Ala. App. 147, 149, 320 So.2d 80
(1975). To prove the corpus delicti it is not necessary to prove that the victim's death was occasioned by the criminal agency of the defendant. James v. State, 339 So.2d 1047, 1050
(Ala.Cr.App.), cert. denied, 339 So.2d 1052 (Ala. 1976). Once there is independent evidence of the corpus delicti, a confession is not required to be corroborated. King v. State,49 Ala. App. 111, 269 So.2d 130 (1972). The confession of accused, alone, may be sufficient to show his connection with the homicide if the corpus delicti is established by other evidence. Arnold v. State, 57 Ala. App. 172, 326 So.2d 700
(1976); Smith v. State, 25 Ala. App. 297, 145 So. 504 (1933);Minton v. State, 20 Ala. App. 176, 101 So. 169 (1924); Rowe v.State, 243 Ala. 618, 11 So.2d 749 (1943).
We will not enumerate the many facts, circumstances, and inferences incriminating the defendant. It is sufficient to note that the State proved the corpus delicti through independent evidence and the incriminating admissions of the defendant served to prove his participation in and guilt of the crime for which he was convicted.
 III
Brent Wheeler is the laboratory director in charge of the Huntsville Office of the Alabama Department of Toxicology and Criminal Investigation. He is a criminalist, "a forensic scientist involved in the handling and examining of certain physical evidence." Wheeler testified, over objection, that the series of circular tears in the pair of jogging pants worn by the victim when he was killed "could be consistent" with having been struck by some circular part of an automobile. This conclusion was based upon Wheeler's personal examination of the clothing, from the autopsy report and findings (of which he did not have personal knowledge), and from his personal experience and training. "The opinions of experts on any question of science, skill, trade, or like questions are always admissible, and such opinions may be given on facts as proved by other witnesses." Alabama Code Section 12-21-160 (1975). Although an expert witness may not express an opinion based on the opinion of another expert, he may base his opinion upon the facts testified to by another expert. Salotti v. Seaboard Coast LineR.R., 293 Ala. 1, 299 So.2d 695 (1974). No violation of this rule is found in Wheeler's testimony.
Even if, as the defendant argues, Wheeler did testify concerning facts not within his personal knowledge, it does not constitute error because the same matters had already been shown without objection in other testimony. Yelton v. State,294 Ala. 340, 342, 317 So.2d 331 (1974); Bush v. State,282 Ala. 134, 139, 209 So.2d 416 (1968). Any testimony by Wheeler that the wounds or injuries to the body of the victim were consistent with a collision between a motor vehicle and a pedestrian was not error where Toxicologist John Kilbourn, who personally performed the autopsy on the victim, had previously testified on the same matters without objection.
Furthermore the testimony of Criminalist Wheeler was not reversible error because it concerned an undisputed and uncontested matter — that the injuries to and the death of the victim were caused by a collision with a motor vehicle. The admission of evidence is harmless if that evidence concerns an undisputed matter. Yelton v. State, 294 Ala. 340, 342,317 So.2d 331 (1974); Rogers v. State, 53 Ala. App. 573, 576-577,302 So.2d 547 (1974).
 IV
Austin Hinds is in the automobile salvage business and owns his own salvage yard. He makes his living pulling wrecked *Page 1171 
automobiles from the scene of an accident into his salvage yard and buying and selling wrecked and damaged vehicles. All of the automobiles that Mr. Hinds deals with in his business are wrecked or damaged. Mr. Hinds has been doing wrecker and salvage work at his own business establishment for eight years, but he testified that, "I've been in it and around it all my life." He has seen and dealt with a lot of wrecked and damaged automobiles in that time. Mr. Hinds estimated that the number of wrecked and damaged automobiles that he had pulled from wreck scenes and bought and sold had averaged twenty-five to thirty a month. He testified that just in the eight years that he had been in business for himself he had handled 3,000 or 4,000 wrecked and damaged vehicles.
Mr. Hinds was allowed to testify that it was his opinion that the damages which he personally inspected on the defendant's truck were consistent with the truck having been in a collision on its front left side "outside the left frame rail in front of the left front wheel, I'll put it that way, about where the left headlight should be."
Whether a particular witness is an expert is a matter largely within the discretion of the trial court and this Court will not disturb that judgment unless there has been an abuse of that discretion. White v. State, 294 Ala. 265, 271,314 So.2d 857 (1975); Sexton v. State, 346 So.2d 1177, 1180
(Ala.Cr.App.), cert. denied, 346 So.2d 1180 (Ala. 1977). The criterion for the admission of expert testimony is that the witness, by study, practice, experience, or observation as to the particular subject, should have acquired a knowledge beyond that of the ordinary witness. White v. State, 294 Ala. 265,271, 314 So.2d 857 (1975). "An expert witness is one who can enlighten a jury more than the average man in the street."Carlton v. State, 342 So.2d 1382, 1385 (Ala.Cr.App. 1977). "Experts may be qualified by experience rather than study or by study rather than experience." Kitchens v. State, 31 Ala. App. 239,241, 14 So.2d 739, 741 (1943). We find no abuse of the trial judge's discretion in allowing Mr. Hinds to testify as an expert witness.
Additionally, defense counsel stated no specific ground for his objection to Mr. Hinds' testimony. "Any objection to an expert witness on the ground that he lacked knowledge goes to the weight rather than to the admissibility of his testimony."Chafin v. State, 333 So.2d 599, 608 (Ala.Cr.App.), cert. denied, 333 So.2d 609 (Ala. 1976).
 V
The defendant attempted to question Doyce Waldrop, a friend of the defendant, about a conversation which he and the defendant had a month or more before the victim was run over and killed. This conversation allegedly concerned whether the defendant's truck needed some parts and whether the defendant intended to replace some parts on the truck. The purpose of this testimony was to explain the defendant's actions in removing and disposing of the front end parts of his truck within forty-eight hours after the victim was run over and killed.
The State objected to any self-serving hearsay from the conversation that the defendant had with Doyce Waldrop. The trial court sustained the State's objections and, in doing so, informed the defendant that he could introduce evidence of any actual efforts by the defendant to obtain parts for the truck even including conversations which were part of his efforts to find parts for the truck.
 "THE COURT: I don't believe . . . I'm going to sustain but I would indicate this, and that is, if you can show he was actually looking for parts, I think that . . . but I don't think just his statement he was going to look for parts . . ."
* * * * * *
 ". . . as opposed to talking about it. I think you can show something he did as opposed to talking about it."
* * * * * *
 "You might show the conversation . . some part of any conversation where he *Page 1172 
was looking for parts . . . shows that he was looking for parts, including at least part of the conversation . ."
* * * * * *
 ". . . in connection with looking for them. If he went somewhere and said he wanted to buy a part . . ."
The defendant offered proof that "at least a month" before the incident the defendant told Doyce Waldrop that "I'm looking for or I intend to replace the parts of this truck from the windshield forward". The defendant did not contend nor did he offer to prove that he made any effort to buy parts from Mr. Waldrop, who is a carpenter by profession.
The court's action and ruling on this matter were not reversible error. The conversation in question was inadmissible hearsay. It has long been the rule in this State that acts and declarations of an accused before an offense are not admissible for him unless they are part of the res gestae. E.g., Shadle v.State, 280 Ala. 379, 194 So.2d 538 (1967); see also, Evans v.State, 338 So.2d 1033 (Ala.Cr.App. 1976), cert. denied, Ala.,348 So.2d 784; Easley v. State, 56 Ala. App. 102, 319 So.2d 721
(1975). For this reason alone, the court acted properly in excluding any testimony about the defendant's acts and declarations more than a month before the incident in question.
Secondly, the trial court did not commit reversible error in excluding that portion of the testimony of Doyce Waldrop because the defendant was allowed to prove what he was seeking with other testimony. The defendant's purpose was to prove that even before the victim was run over and killed the defendant's truck needed parts, and the defendant was looking for those parts before the incident took place. No fewer than five witnesses testified to the fact that defendant's truck was damaged and needed parts even before the victim was run over and killed. Any error in incorrectly refusing to admit evidence is cured by subsequently admitting it through that same witness or other witnesses. Simmons v. State, 353 So.2d 11, 17
(Ala.Cr.App.), cert. denied, 353 So.2d 18 (Ala. 1977); Thompsonv. State, 354 So.2d 1134, 1137 (Ala.Cr.App.), cert. denied,354 So.2d 1138 (Ala. 1977); Tate v. State, 337 So.2d 16
(Ala.Cr.App. 1976); Lovell v. State, 51 Ala. App. 286, 289,284 So.2d 741 (1973); Brooks v. State, 45 Ala. App. 196, 202,228 So.2d 24 (1969); McPhearson v. State, 271 Ala. 533, 537,125 So.2d 709 (1961).
The fact that the defendant was looking for parts for the front end of his truck even before the victim was run over and killed was also in evidence by the testimony of several witnesses. Ira Willingham testified that about three or four months before the incident the defendant asked him to do some bodywork and painting on the defendant's truck. Willingham stated that he told the defendant what parts the truck needed, and that it would be best for the defendant to simply get a whole new front end for his truck. Willingham further testified that the defendant told him that he would find the parts and let Willingham fix it. Talmadge Helton, who is in the salvage and junkyard business, testified that about three months before the victim was run over and killed the defendant was looking for front end parts for his truck. In addition, the defendant himself testified that during a three or four month period before the incident happened he had been looking around and talking to some people about buying used parts for his truck. Therefore, even if it was error to exclude Waldrop's testimony concerning the conversation in which the defendant told him that he was looking for parts for his truck, that error was cured when other witnesses testified to the same facts. Simmonsv. State, supra; Thompson v. State, supra; Tate v. State, supra; Lovell v. State, supra; McPhearson v. State, supra.
We have searched the record for error prejudicial to the defendant and carefully considered each issue presented on appeal. We have viewed not only each separate instance of alleged error but have considered the cumulative effect of all the alleged errors. Our review convinces us that the defendant received a fair trial at which *Page 1173 
he was represented by able counsel. Therefore the judgment of the Circuit Court is affirmed.
AFFIRMED.
All the Judges concur.