Joe Lee Jones was indicted for robbery in the first degree, in violation of § 13A-8-41, Code of Alabama 1975, and was found "guilty of Robbery in the First Degree as charged in the indictment" by the jury.
After a hearing by the trial judge, in accordance with the Habitual Offender Act, the appellant was sentenced to life imprisonment in the penitentiary without parole.
Kathy Kleckner testified that she and her husband own a flower and gift shop called Burton's Florist, located at 7212 First Avenue, North, in Birmingham, Alabama. On Sunday, March 23, 1980, the couple planned to open the shop from 1:00-5:00 p.m. At approximately 3:30 or 3:40 p.m., Mrs. Kleckner was at the shop along with her husband, her son and two customers, a woman and her daughter. *Page 1369 
Sometime around 3:55 p.m., Mrs. Kleckner was behind the front counter of her shop talking to her two customers when a tall, slender black male with bushy hair and wearing dark pants, a green colored jacket and a red cap entered the shop. She identified the appellant as the man who entered her shop that day and said she was positive of her identification.
The appellant walked around the shop for a while and when he came to the counter Mrs. Kleckner asked if she could help him. At this point, the appellant reached into his pocket, pulled out a gun and said, "This is a robbery, give me your money." (R. 72). He kept telling her to give him her money and not to look at him. Mrs. Kleckner could see the customers looking through their billfolds for money.
Mrs. Kleckner told the appellant she did not have any money and he pointed to the cash register. She opened the register and gave him $150. The appellant then left the shop and went around the corner to the right.
Mrs. Kleckner then told her husband they had been robbed and the police were called.
On voir dire, Mrs. Kleckner testified she was shown a set of photographs sometime after the robbery. She picked out a subject (the appellant) but stated she wanted to see him in person to be certain. A line-up was arranged and Mrs. Kleckner requested each of the six subjects repeat, "This is a robbery, give me your money." (R. 32). A combination of hearing the voice and seeing the subject's face and profile helped her identify the man who robbed her that day. The man she identified was the appellant.
State's Exhibits number 1-7 (which were reprints of the photographs originally shown to Mrs. Kleckner) were shown to Mrs. Kleckner. She picked out Exhibit # 1, the photograph of the appellant.
Howard Miller, an investigator with the Birmingham Police Department, testified he showed Mrs. Kleckner a group of seven photographs. At this time there was not a suspect in custody and he made no indication to Mrs. Kleckner as to which photograph she should choose or that the man who robbed her would be among those photographs.
Miller testified Mrs. Kleckner picked out the man depicted in State's Exhibit # 1 and said she thought this was the man but could not be sure until she saw him in person. He arranged a line-up and was unable to attend but he never suggested to Mrs. Kleckner that the man she picked out in the photographs was to be in the line-up.
Miller further testified that State's Exhibits number 1-7 were not the exact photographs which Mrs. Kleckner had seen. These were black and white and reprints of the negatives of the same photographs she had seen. He did not have the original photographs because they had faded out due to problems with the department's black and white processing.
Johnny Woods of the Birmingham Police Department was in charge of the line-up which Mrs. Kleckner and several other witnesses to other crimes viewed. Woods told all of the witnesses to take a good look at each of the subjects. He informed them that the person they were looking for may or may not be involved in the line-up. If the witness so requested, the subjects could turn a certain way or speak a particular phrase. Woods testified all of the subjects were wearing white overalls and he made no indication to the witnesses as to whom they should choose.
Mrs. Kleckner looked at the subjects, listened to them say a phrase and then picked out the appellant.
Michael Carl Shores of the Birmingham Police Department was the officer called to the scene of the robbery. He interviewed the witnesses, obtained a description of the suspect and filed the incident report. Shores testified he did not request fingerprinting because so much of the shop was common ground (items touched frequently by many persons).
The first witness for the defense was the appellant's wife, Patricia Jones. She testified she, the appellant, and her children were at home watching television on the *Page 1370 
afternoon of the robbery. Lamar Benson and Gregory Humphrey had been at her house around 3:00 p.m. that afternoon, she said. Mrs. Jones admitted on cross-examination that she never told the district attorney's office that the appellant was home with her on that day.
Lamar Benson had been staying at the Jones house for two weeks prior to the appellant's arrest. On the night of his arrest, Benson and Humphrey were at the Jones house at 6:00 p.m. The two left and Benson returned sometime after 9:00 p.m.
Sometime after midnight, Mrs. Jones went to the door. The police identified themselves and asked for Lamar Benson. They arrested both Benson and the appellant.
Lamar Benson testified against the advice of his lawyer. On March 23, 1980, Greg Humphrey told him to drive to a flower shop in Woodlawn. When they arrived at this place, Humphrey got out of the car and told Benson to wait. A few minutes later, Humphrey came back to the car and told Benson to drive off. On that day, Humphrey was wearing bluejeans, a green army jacket and a burgundy skull cap and was carrying a .22 gun. Benson claimed the appellant was not with them on that day.
Howard Miller, a rebuttal witness for the State, testified he arrested Greg Humphrey on April 2, at 1:30 or 2:00 a.m. Miller had a warrant for Benson's arrest so Humphrey showed them where Benson was staying.
Miller and the other police officers went to the appellant's house around 3:00 or 3:30 a.m. and arrested Benson and the appellant. The appellant was told he was under arrest for robbery (Mrs. Kleckner had already picked the appellant out in the photographs).
The next day Miller had a conversation with Benson. Benson stated he did not have anything to do with the robbery and he said Humphrey and the appellant committed the robbery.
 I
The appellant contends his in-court identification should have been suppressed because it was tainted by unnecessarily suggestive out-of-court identification procedures.
The record does not support the appellant's contention. The trial judge, after listening to testimony on voir dire concerning the circumstances surrounding the photographic array and the live line-up, did not find the procedures to be unduly suggestive. Neither do we.
Mrs. Kleckner was shown a group of seven photographs from which she picked out the appellant. At that time, she admitted she could not be certain the man she picked out was the robber until she saw him in person. A line-up was promptly arranged and Mrs. Kleckner positively identified the appellant after seeing him and hearing his voice. Never was there any suggestion or indication made to Mrs. Kleckner by anyone during the photographic or live line-up as to whom she should choose.
The appellant claims Mrs. Kleckner should not have been allowed to hear the subjects in the line-up speak. However, "A person's voice is a `physical characteristic,' subject to be compelled to disclose to identifying witness. United States v. Wade,388 U.S. 218, at page 222, 87 S.Ct. 1926 [at page 1929] 18 L.Ed.2d 1149."Wilson v. State, 57 Ala. App. 125, 326 So.2d 316 (1975).
Therefore, we cannot find anything improper with the pre-trial identification procedures. See also Williamson v. State,384 So.2d 1224 (Ala.Cr.App. 1980).
Furthermore, Mrs. Kleckner's in-court identification was based on her eyewitness observation of the appellant during the course of the robbery. We conclude her identification was totally reliable, based upon our application of the five factors enumerated in Neil v. Biggers, 409 U.S. 188, 93 S.Ct. 375,34 L.Ed.2d 401 (1972), to the case at bar. (1) The opportunity of the victim to view the criminal at the time of the crime. Mrs. Kleckner had an ample opportunity to view the appellant during *Page 1371 
the several minutes he was in the shop. She saw him enter the store, watched him as he walked around and talked to him from close proximity. (2) The witness's degree of attention. Certainly Mrs. Kleckner's attentiveness was extremely acute when the appellant pulled out a gun and told her "this is a robbery." She was able to tell the police about the appellant's movements during the entire time he was in the shop. (3) The accuracy of the victim's prior description. Mrs. Kleckner gave the police a description of what the appellant was wearing, what kind of hair he had and his approximate size. (4) The level of certainty demonstrated by the witness at the confrontation. Even though Mrs. Kleckner could not positively identify the appellant from the photographs, she did so at the live line-up and at the trial. (5) The length of time between the crime and the confrontation. Mrs. Kleckner identified the appellant at the line-up less than a month after the robbery occurred.
Therefore, we conclude the appellant's motion to suppress his in-court identification was properly denied.
 II
The appellant complains reversible error occurred when State's Exhibits 1-7, which were not the same exact photographs shown to Mrs. Kleckner, were admitted into evidence.
We do not agree with the appellant. Officer Miller testified that the actual photographs shown to Mrs. Kleckner had faded away. The photographs admitted as Exhibits 1-7 were reprints of the negatives of the original photographs shown Mrs. Kleckner and depicted the same exact subject matter as the original photographs which were now non-existent.
Miller revealed the two sets of photographs were virtually identical and he explained the reason for the unavailability of the original photographs. This court believes there was no reason to exclude State's Exhibits 1-7.
Furthermore, the decision whether to admit into evidence State's Exhibits 1-7 was within the sound discretion of the trial judge and we will not reverse except for abuse of that discretion. We can find none here.
 III
The appellant contends the trial judge erred in overruling the appellant's motion for a new trial. Counsel for the appellant alleges the State failed to prove the appellant's guilt beyond a reasonable doubt and, therefore, that the verdict was contrary to the evidence.
 "In determining the sufficiency of the evidence to sustain the conviction, this court must accept as true the evidence introduced by the State and accord the State all legitimate inferences therefrom. The evidence must be considered in the light most favorable to the prosecution." Johnson v. State, 378 So.2d 1164 (Ala.Cr.App. 1979).
First of all, the victim, Mrs. Kleckner, testified the appellant was the man who came into her store and robbed her on the afternoon in question. She said the appellant, with a gun in his hand, told her that this was a robbery and to give him her money. Mrs. Kleckner said the appellant was in the store for a while, she got a good look at him and she was positive of her identification.
Secondly, one of the two witnesses for the defense was the appellant's wife. This fact undoubtedly affected her credibility. She was an alibi witness but testified she never attempted to tell the district attorney the appellant was at home with her until the trial. The other defense witness was Benson and his testimony was adequately rebutted by Officer Miller.
 "This court will not disturb a verdict of conviction on the grounds of insufficiency of the evidence, `unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this court that it was wrong and unjust.'" Johnson, supra. *Page 1372 
This court is not so convinced. Certainly there was sufficient legal evidence from which the jury could, by fair inference, have found the appellant guilty of robbery in the first degree.
 IV
Counsel for the appellant claim they were not given notice by the State that it intended to proceed under the Habitual Offender Act or of the prior convictions the State intended to introduce at the hearing.
There was testimony at the sentencing hearing by the district attorney that on the day of the appellant's conviction, the State served notice on defense counsel of its intent to proceed under the Habitual Offender Act and copies of three of the appellant's prior convictions were placed in the record.
The district attorney testified that although he did not actually serve the papers on defense counsel himself, he did remember seeing the signature of one of the appellant's attorneys on the notice receipt. However, he admitted he was unable to locate a copy of the receipt. He also testified that he called the attorney for the appellant on Wednesday before the Friday sentencing hearing and informed him of another prior conviction of the appellant. The district attorney attempted to serve notice of this conviction on the appellant's attorney. The attorney was not at his office for two days so the district attorney left a certified copy of the conviction at his office.
Counsel for the appellant did not deny being put on notice of the State's intention to proceed under the Habitual Offender Act or being served with the appellant's prior convictions. He just stated he could not remember.
It is clear from our reading of the record that he knew of at least two of the appellant's prior convictions. He admitted he was informed of one of them on Wednesday and he represented the appellant in another one of the convictions.
From a review of the record of the proceedings of the sentencing hearing, we find that there was sufficient evidence for the trial judge to conclude that defense counsel had received proper notice and therefore the admission of the appellant's convictions was proper.
 V
The appellant argues that two of his prior convictions were improperly admitted during the sentencing hearing.
Both of those convictions were the result of guilty pleas and the appellant maintains these convictions should not have been admitted because the State failed to show the appellant made a knowing waiver of his Boykin rights.
Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274
(1969), states that before a trial judge may sentence a defendant following a plea of guilty, he must inquire if the defendant's plea has been given knowingly and voluntarily. However, this rule of law has no application to the instant case. It only applies during the sentencing of the defendant following his guilty plea. There is no authority that these matters must be reviewed when that conviction is used pursuant to the Habitual Offender Act.
A plea of guilty is a conviction itself. This is not the proper forum for attacking a prior conviction used during a habitual offender hearing. The proper forum for attacking the validity of a prior conviction would be by a petition for a writ of error coram nobis. See Mayola v. State, 337 So.2d 105 (Ala.Cr.App. 1976).
The appellant further contends that since he was a youthful offender at the time he pled guilty to one of the prior convictions, he should have been apprised of his youthful offender rights. We agree that one must be informed of his youthful offender rights if they apply, but, again, they cannot be raised on collateral attack. The proper way to challenge on these grounds would also be by a petition for a writ of error coram nobis. See Mayola v. State, supra. Clemmons v. State, *Page 1373 56 Ala. App. 275, 321 So.2d 237 (Ala.Cr.App. 1974), aff'd., 294 Ala. 746, 321 So.2d 238 (Ala. 1975).
Furthermore, we find that the State gave adequate proof of the appellant's prior convictions. The State offered certified copies of the appellant's prior convictions, trial docket sheets and indictments as proof of the appellant's prior convictions and witnesses testified to the identity of the appellant as the person named in those records of convictions.
"Each exhibit was authenticated by the custodian of those records. Each exhibit showed on its face a prior felony conviction of the appellant. Each exhibit showed on its face that appellant was represented by counsel." Thomas v. State,395 So.2d 1105 (Ala.Cr.App. 1981).
Proof of the appellant's prior convictions showed his convictions were properly obtained, and those convictions were properly used at the habitual offender hearing.
Therefore, for the reasons stated above, the judgment of the trial court is due to be and hereby is affirmed.
AFFIRMED.
All Judges concur.