Appellant, Autrey Lee Bowden, was indicted for the murder of Vincent Terrell Neely, "by shooting him with a shotgun," in violation of § 13A-6-2, Code of Alabama 1975. A jury found him guilty as charged, and the trial court sentenced him to life imprisonment. He appeals, raising 12 issues.
The homicide, out of which this indictment arose, occurred sometime around 7:00 a.m., on February 7, 1987, at Crichton Auto Parts in Mobile. The state's evidence tends to show that the victim, Vincent Terrell Neely, an employee of the auto parts company, had apparently unlocked the front door in preparation for the day's business, and was standing at the counter reading the morning paper, while drinking a cup of Hardee's coffee, when he was killed by a 12-gauge shotgun blast in the back of the head. At 7:11 a.m., appellant, who jointly owned the business with his sister, Eva B. Neely, was observed at the back door of the business, getting into his pickup truck and quickly driving away. At 7:12 a.m., a customer entered the front door of the building and, finding no one there, he began to look around, and discovered the victim lying behind the counter. He observed blood just beginning to ooze from under the victim's head. The victim was the son of Eva B. Neely, and he and his mother were not on good terms with appellant. A dispute had been brewing for some time between them over the conduct of the business, and a suit was pending over the dissolution of the company. In the weeks preceding the shooting, the dispute had escalated into violent arguments and physical confrontations between appellant, his sister, and the victim. Appellant had accused his sister of trying to take his business from him, and his nephew, the victim, of taking money from the company. Appellant carried a pistol and made numerous threats toward his sister and the victim, threatening to "blow them away." On at least three occasions, physical confrontations occurred. On one such occasion, appellant struck Eva over the head with a *Page 337 
heavy account book; on another occasion, he tried to break her arm in a door; and on the Thursday before the Saturday of the shooting, he pointed an unloaded pistol in her back and pulled the trigger. These altercations were accompanied by threats to "blow her away." During the Thursday incident involving the pistol, the victim came to the aid of his mother, grabbed appellant, and pushed him out the back door. Shortly thereafter, appellant returned, pointed the pistol at the victim, and said the following: "I'll get you. This week will not go by before I get you." After the shooting, a disassembled 12-gauge shotgun was found at appellant's residence, but the firing pin mechanism was never found. Appellant stated to a police officer on the scene, shortly after the shooting, that he had been at the business earlier in the morning and everything was all right. The appellant did not take the witness stand in his own behalf.
 I.
Appellant contends that the testimony of Other Lockett, a Mobile police officer, regarding the meaning of a receipt from Hardee's restaurant is inadmissible hearsay, and that the admission of that testimony, over his timely objection, constituted reversible error.
On the afternoon following the shooting, Officer Lockett, one of the officers assigned to investigate the homicide, searched the victim's automobile and found a Hardee's bag containing a Hardee's receipt for the purchase of a cup of coffee and a biscuit. The receipt reflects the figures "2/7" and "06.67." The officer contacted Hardee's personnel to "verify" the meaning of the figures.
Officer Lockett was called as a witness for the state in rebuttal. The purpose of calling him was to attack the credibility of the defendant's key witness, Ralph Brown, Sr., who had testified that he lived near Crichton Auto Parts, and had heard, from the direction of the auto parts company, what he believed to be a shotgun blast; that, after he heard this, he observed a blue-black automobile (not a pickup truck) coming from the direction of the company and passing his house at a high rate of speed; and that, after he observed this, he smoked a cigarette and then looked at his clock and saw that it was 6:45 a.m. Appellant contended that Brown heard the shot and saw the speeding automobile at approximately 6:40 a.m. This witness's testimony was introduced to support appellant's theory of defense, which was that the deceased was a victim of a robbery by persons unknown. We point out that several quarters from the cash register had been found strewn about the body of the deceased. The state theorized that the fact that some of the coins were on top of blood spots supported the theory that they had been dropped or thrown down after the shooting in an attempt to make the crime appear to be a robbery-murder.
Officer Lockett identified the Hardee's receipt, and it was introduced into evidence without objection. Lockett was then asked the meaning of the figures referred to above. For a clearer understanding of what occurred, we quote a portion of Lockett's testimony from the record:
 Q. [Prosecuting attorney]: Now, sir with reference to this receipt, there appear in the upper left-hand corner the numbers 2/07. What does that mean?
 "MR. COPELAND [defense counsel]: We object to what that means. There's no predicate known — shown that he can interpret the document. The document speaks for itself.
"THE COURT: What is your question?
 "MR. GALANOS [prosecuting attorney]: The significance of 2/07.
 "THE COURT: If he knows, he can answer it. Overruled.
 "A. It was the date on which the purchase was made at Hardee's. *Page 338 
 "Q. All right, sir. And on the right side, there is the designation 06.67. If you know, what does that mean?
 "MR. COPELAND: Same objection. No predicate for interpretation. It speaks for itself.
"THE COURT: Overruled.
 "MR. BOONE [defense counsel]: Judge, if I may take the witness on voir dire very briefly?
"THE COURT: Sure.
"VOIR DIRE EXAMINATION:
"BY MR. BOONE:
 "Q. Officer Lockett, is all of this based on something somebody told you?
 "A. It is backed up by something that someone told me.
 "Q. But you didn't know it until somebody told you, did you?
"A. I would have surmised it.
 "MR. BOONE: No further questions. Renew the objection.
"THE COURT: And I still overrule the objection.
"DIRECTION EXAMINATION CONTINUED:
"BY MR. GALANOS:
 "Q. So you went to Hardee's or excuse me. Did you go somewhere to find out what those numbers meant?
"A. Yes, sir, I did.
"Q. All right. So 2/7 means what?
"MR. COPELAND: Same objection.
"THE COURT: Overruled.
"A. 2/07 is the date of the purchase.
 "Q. All right, sir. And then what is the number on the right there?
"A. 06.67.
"Q. 06.67. What does that mean?
 "MR. BOONE: Same objection, Judge. He can't possibly know what these numbers mean on this receipt unless it's something somebody's told him. He doesn't work at Hardee's. He's a police officer.
 "THE COURT: I'm going to let the jury determine that. Overruled.
"MR. BOONE: It's hearsay. We object to it.
"THE COURT: And I overruled.
 "A. The 06 would be six a.m., and the .67 is sixty-seven one-hundredths of the hour.
 "Q. All right. And you correct me if my arithmetic is wrong. (Writing.) That's — sixty-seven one-hundredths of an hour is forty minutes and twenty seconds after the hour; is that right?
"A. Yes, sir.
 "Q. So you found a receipt in Terry Neely's truck which reflected that a purchase was made on Saturday, the 7th, at six forty in the morning?
 "MR. BOONE: Judge, I would object to what that receipt reflects. It's hearsay. Mr. Galanos knows it's hearsay. That officer has said everything he's testifying to is based on something somebody told him.
"THE COURT: No, that isn't —
 "MR. BOONE: They could have brought the folks from Hardee's.
 "THE COURT: No, that is not what he said, but he's already answered your question.
"MR. GALANOS: I pass the witness.
"CROSS-EXAMINATION:
"BY MR. BOONE:
 "Q. Mr. Lockett, everything you have testified to — the date, time, everything — is based on what somebody told you those numbers meant, isn't it?
"A. Not exactly.
"Q. The date is not based on it, is it?
 "A. My knowledge of it led me to believe this. I verified it —
 "Q. You went and asked somebody a number of questions about everything, didn't you?
"A. To verify it, yes, sir.
"Q. Yes, sir.
"MR. BOONE: That's all.
 "MR. GALANOS: Nothing further of Sergeant Lockett.
"THE COURT: You may step down.
"(Witness excused.)
 "MR. GALANOS: That concludes the State's rebuttal."
We note that much has been written to define and explain the rules regarding hearsay evidence: *Page 339 
 "Evidence is called hearsay when its probative force depends, in whole or in part, on the competency and credibility of some person other than the witness by whom it is sought to produce it; it is primarily testimony which consists in a narration by one person of matters told him by another. A clear example of hearsay evidence appears where a witness testifies to the declaration of another person for the purpose of proving the facts asserted by declarant."
31A C.J.S. § 192 Evidence (1964) (footnotes omitted).
 "The general rule is that, subject to certain exceptions, hearsay evidence is inadmissible, or incompetent; the courts will not receive the testimony of a witness as to what some other person said, or told him, as evidence of the existence of the fact asserted."
Id. at § 193a (footnotes omitted).
 "The rule excluding hearsay is a basic, rather than a technical, rule. The reason for the rule is that the unsworn statement of a person not called as a witness or subjected to the test of cross-examination is not recognized as having a sufficient probative effect to raise an inference that the fact is as stated; and the rule is particularly applicable when such person can be summoned and sworn as a witness. The right of a party to test by cross-examination the veracity and accuracy of the person making the statement offered in evidence has been said to be the principal reason for the hearsay rule; the reason for the exclusion is that the test of cross-examination of the person making the statements out of court, at the time they are made, is unavailable as a guard against falsification or inaccuracy."
Id. at § 193b (footnotes omitted). See Ex parte Anonymous,502 So.2d 1215 (Ala. 1987), adopting the dissenting opinion of Bowen, J., in Anonymous v. State, 502 So.2d 1211
(Ala.Cr.App. 1986); Hurst v. State, 356 So.2d 1224
(Ala.Cr.App. 1978); Cordle v. State, 53 Ala. App. 148,298 So.2d 77, cert. denied, 292 Ala. 717, 298 So.2d 85 (1974), cert. denied, 419 U.S. 1033, 95 S.Ct. 516, 42 L.Ed.2d 309 (1974).
The state argues that it is evident from the record that Lockett was testifying, from his own first-hand knowledge, about the meaning of the numbers on the receipt. Our review of the record does not lead us to the same conclusion. In our opinion, Lockett's explanation of the meaning of the entries on the receipt was pure hearsay. Its probative force depended entirely on the competency and credibility of some person other than Lockett. The record does not show that Lockett had first-hand knowledge of the meaning of the entries, particularly, the entry of "06.67," which was crucial. His testimony that he "verified" the information and "would have surmised it," indicates a lack of knowledge. The principal reason for the hearsay rule was violated here. Appellant was denied the right to cross-examine the person who did possess first-hand knowledge of the entries to test the accuracy of the information. (Moreover, the veracity of this person was not subject to scrutiny.) A person from the Hardee's restaurant, with such knowledge, would have been the proper person to be subpoenaed and questioned, under oath, for that purpose. For example, appellant could have questioned this employee on the accuracy of the Hardee's clock or cash register computer. The record does not indicate that such person was unavailable.
We cannot conclude that the admission of the testimony did not prejudice a substantial right of appellant and, thus, was error without injury. The figure on the receipt cast doubt upon Brown's testimony and upon appellant's robbery-murder theory of defense and bolstered the state's case. Indeed, the prosecutor bore down heavily on this in summation. We conclude that the admission of the hearsay testimony of Lockett requires reversal of this case. *Page 340 
 II.
We deem it appropriate to comment about another issue raised by appellant. During the course of the trial, Dr. Leroy Riddick, a pathologist and coroner for Mobile County, who participated in the investigation and who conducted the autopsy on the victim's body, was permitted to testify, over proper objection, as an expert, to the relative positions of the victim and his assailant at the time the fatal shot was fired. Dr. Riddick summarized the state's evidence, including a description of the victim's wounds, and drew conclusions for the jury as to the relative positions of the victim and his assailant at the time the shot was fired. In our opinion, these are matters better left to the jury.
"The authorities are committed to the rule that an expert witness cannot give evidence of his opinion of the relative positions of the combatants when a shot is fired."Richardson v. State, 37 Ala. App. 194, 196, 65 So.2d 715, 717
(1953). See also Wilson v. State, 430 So.2d 891
(Ala.Cr.App. 1983); Ivey v. State, 369 So.2d 1276 (Ala.Cr.App.), cert. denied, 369 So.2d 1281 (Ala. 1979); Lovell v. State,51 Ala. App. 286, 284 So.2d 741 (1973); Padgett v. State,49 Ala. App. 130, 269 So.2d 147, cert. denied, 289 Ala. 749,269 So.2d 154 (1972);
Even though we find that it was improper to permit Dr. Riddick to give his opinion as he did, we find that it was error without injury and that the error did not probably injuriously affect a substantial right of appellant. There was no real issue involved here except identity. Moreover, Dr. Riddick's testimony is cumulative in nature. There is no question that the victim was shot in the head from behind with a shotgun. The distance between the victim and his assailant when the shot was fired was not a matter of contest in the evidence. The morning paper, coffee cup, blood splatters, and wadding leave little, if any, doubt that the victim was standing at the counter and that his assailant was behind him when he was shot. Appellant does not contest this evidence or contend that the shooting occurred in any other fashion. Clearly, therefore, there is nothing in the testimony of Dr. Riddick upon this question that could have proved prejudicial to any substantial right of appellant. The admission of this testimony was not error to reverse. See Stallings v. State,249 Ala. 1, 32 So.2d 233 (1946); Bass v. State, 219 Ala. 282,122 So. 45 (1929); Monts v. State, 186 Ala. 1, 64 So. 953 (1914);Lovell v. State, supra. However, we caution that this determination is the result of our consideration of the entire evidence of this trial; thus, on retrial, the introduction of any similar testimony should be evaluated in light of the evidence at the retrial, in the event appellant is retried.
We pretermit consideration of the other issues raised in brief.
For the reasons set out above in section I, the judgment of conviction is due to be reversed, and the cause is hereby remanded.
REVERSED AND REMANDED.
All Judges concur. *Page 341